GENERAL MOTORS CORP. *v.* UNITED STATES

No. 89–369.    Argued March 21, 1990—Decided June 14, 1990

BLACKMUN, J., delivered the opinion for a unanimous Court.

*Theodore L. Garrett* argued the cause for petitioner. With him on the briefs were *Sonya D. Winner, Harry J. Pearce, James C. Cubbin,* and *Patrick J. McCarroll.*

*Deputy Solicitor General Wallace* argued the cause for the United States. With him on the brief were *Solicitor General Starr, Assistant Attorney General Stewart, Clifford M. Sloan, Martin W. Matzen,* and *David C. Shilton.*\*

---

\**Roland T. Huson III* and *Ann C. Coco* filed a brief for the Department of Environmental Quality of Louisiana as *amicus curiae* urging reversal.

A brief of *amici curiae* urging affirmance was filed for the Commonwealth of Massachusetts et al. by *James M. Shannon,* Attorney General of Massachusetts, and *James R. Milkey,* Assistant Attorney General, and by

JUSTICE BLACKMUN delivered the opinion of the Court.

This case concerns a Clean Air Act enforcement action by the Environmental Protection Agency (EPA) against petitioner General Motors Corporation (GMC). We are asked to decide whether the 4-month time limit on EPA review of an original state implementation plan (SIP) also applies to its review of a SIP revision, and whether, if EPA fails to complete its review of a SIP revision in a timely manner, EPA is prevented from enforcing an existing SIP.

I

What is known as the Clean Air Act, 77 Stat. 392, became law on December 17, 1963. Twenty years ago, Congress enacted the Clean Air Amendments of 1970, 84 Stat. 1676, a comprehensive national program that made the States and the Federal Government partners in the struggle against air pollution. The threats to human health were regarded as urgent, and the 1970 Amendments were designed to result in the expeditious establishment of programs to deal with the problem. The amendments specified a detailed timetable for

the Attorneys General for their respective States as follows: *John K. Van de Kamp* of California, *Clarine Nardi Riddle* of Connecticut, *Jim Jones* of Idaho, *Neil F. Hartigan* of Illinois, *Robert T. Stephan* of Kansas, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Robert Abrams* of New York, *Lacy H. Thornburg* of North Carolina, *Jeffrey Amestoy* of Vermont, *Mary Sue Terry* of Virginia, and *Kenneth Eikenberry* of Washington.

Briefs of *amici curiae* were filed for the Chamber of Commerce of the United States by *Robin S. Conrad;* for Golden West Refining Co. et al. by *Lawrence J. Straw, Jr.,* and *Kenneth A. Manaster;* for the Mid-America Legal Foundation by *Martha A. Churchill* and *James T. Harrington;* for the Motor Vehicle Manufacturers Association et al. by *Francis S. Blake, Jerome C. Muys, Jr., William H. Crabtree, G. William Frick,* and *Henry V. Nickel;* for the National Governors' Association et al. by *Benna Ruth Solomon, Joyce Holmes Benjamin,* and *Beate Bloch;* for the Service Station Dealers of America by *Dimitri G. Daskalopoulos;* and for the Washington Legal Foundation by *Daniel J. Popeo, Paul D. Kamenar, Robert H. Lamb,* and *Robert S. Smith.*

federal and state action to accomplish this objective. They required the EPA Administrator, within 30 days of the passage of the amendments, to promulgate national ambient air quality standards (NAAQS). § 109(a)(1), 42 U. S. C. § 7409(a)(1) (1982 ed.). Within nine months thereafter, each State was to submit a SIP to implement, maintain, and enforce the NAAQS. § 110(a)(1), 42 U. S. C. § 7410(a)(1) (1982 ed.). As the final step in this start-up phase of the program, EPA was to act on a proposed SIP within four months: "The Administrator shall, within four months after the date required for submission of a plan under paragraph (1), approve or disapprove such plan or any portion thereof." § 110(a)(2), as amended, 42 U. S. C. § 7410(a)(2) (1982 ed.). The Administrator was directed to approve the SIP if he determined that it was adopted after reasonable notice and hearing and that it met various substantive requirements, including emissions limitations, devices for monitoring air-quality data, and enforcement mechanisms.

The integrated timetable established by the 1970 amendments reflected the urgency of establishing air-pollution controls. But the amendments also recognized that local needs and control strategies could evolve over time and that SIP's would have to change as well. The States therefore were authorized to propose SIP revisions, and the EPA Administrator was directed to approve any such proposed revision "if he determines that it meets the requirements of paragraph (2) and has been adopted by the State after reasonable notice and public hearings." § 110(a)(3), 42 U. S. C. § 7410(a)(3)(A) (1982 ed.).

The 1970 amendments also specified certain enforcement mechanisms. The Act empowered EPA to order compliance with an applicable implementation plan, § 113(a), 42 U. S. C. § 7413(a) (1982 ed.), and to seek injunctive relief against a source violating the plan or an EPA order, § 113(b), as amended, 42 U. S. C. § 7413(b) (1982 ed.). In addition, Congress prescribed criminal penalties for knowing violations of

plans and orders, § 113(c), 42 U. S. C. § 7413(c) (1982 ed.), and authorized citizen suits for injunctions against violators, in the absence of Government enforcement, § 304, as amended, 42 U. S. C. § 7604 (1982 ed.).

Congress further amended the Clean Air Act by the Clean Air Act Amendments of 1977. 91 Stat. 685. It added to the Act the concept of a "nonattainment area"—an area where air quality falls short of the NAAQS. § 171(2), 42 U. S. C. § 7501(2) (1982 ed.). The deadline for attainment of the primary NAAQS in a nonattainment area was December 31, 1982. § 172(a)(1), 42 U. S. C. § 7502(a)(1) (1982 ed.). Further extensions were permitted for "photochemical oxidants" (ozone) or carbon monoxide, but only if the State demonstrated that attainment was not possible before 1983 "despite the implementation of all reasonably available measures" and that attainment would be achieved "as expeditiously as practicable, but not later than December 31, 1987." § 172(a)(2), 42 U. S. C. § 7502(a)(2) (1982 ed.).

## II

### A

The entire Commonwealth of Massachusetts is a nonattainment area for NAAQS with respect to ozone. See 40 CFR § 81.322, p. 126 (1989). Petitioner GMC owns and operates an automobile assembly plant in Framingham, Mass. The plant's painting operation is a source of volatile organic compounds that contribute to ozone. In 1980, EPA approved Massachusetts' proposed nonattainment area SIP governing volatile organic compound emissions from automobile-painting operations. The SIP permitted GMC to meet emissions limits in stages, but required full compliance by December 31, 1985. In 1981, EPA published a policy statement suggesting that new technology in automobile-painting operations might justify deferral of industry compliance until 1986 or 1987. 46 Fed. Reg. 51386. Three years later, in November 1984, GMC sought an extension from the

December 31, 1985, compliance date imposed by the existing SIP, not for the new technology, but rather for additional time to install emission controls on its existing lines.    App. 38.    In June 1985, GMC proposed converting to the new technology and requested a summer 1987 deadline.    *Id.*, at 41.    The Commonwealth approved the revision and submitted the proposal to EPA on December 30, 1985, one day before the existing SIP compliance deadline.    *Id.*, at 50.

GMC began construction of a new painting facility but continued to operate its existing plant.    On August 14, 1986, EPA sent GMC a notice of violation informing GMC that it was in violation of the applicable SIP.    *Id.*, at 75.    Approximately one year later, on August 17, 1987, the Government filed an enforcement action under § 113(b) of the Act, 42 U. S. C. § 7413(b) (1982 ed.), alleging violations of the existing SIP's 1985 deadline.    On September 4, 1988, the agency made its final decision to reject the revision.    53 Fed. Reg. 36011.

B

The District Court construed § 110(a)(3) as imposing a 4-month time limit on EPA review of a SIP revision, App. 123–124, and concluded that when EPA failed to complete its review within four months, it was barred from enforcing the existing SIP during the interval between the end of the 4-month period and the time EPA finally acted on the revision, *id.*, at 125.    Because EPA had not issued a notice of noncompliance until well after the 4-month period had elapsed and, at the time of the court's ruling, had yet to make a final decision on the Commonwealth's SIP revision, summary judgment was entered for GMC.

The Court of Appeals for the First Circuit reversed that judgment and remanded the case for further proceedings. 876 F. 2d 1060 (1989).    The Court of Appeals agreed with the District Court that the Act imposed a 4-month deadline on EPA review of a SIP revision, but concluded that the failure

to meet that deadline did not preclude EPA from enforcing the existing SIP.

Reasoning that an enforcement bar was too drastic a remedy for agency delay, the court concluded that the appropriate remedies for agency inaction were those provided by the Act itself: a suit to compel agency action under § 304(a)(2), 42 U. S. C. § 7604(a)(2) (1982 ed.), or a request pursuant to § 113(b), 42 U. S. C. § 7413(b) (1982 ed.), for reduction or elimination of penalties during the period in which unreasonable agency delay resulted in prejudice. 876 F. 2d, at 1067–1068. We granted certiorari because of a disagreement among the Circuits as to whether EPA is barred from enforcing an existing SIP if the agency fails to take action on a proposed SIP revision within four months.[1] 493 U. S. 991 (1989).

### III

To assure that some form of pollution-control requirements were put in place quickly, the 1970 Amendments established a series of deadlines. One of these was the requirement that EPA act on a proposed SIP within four months after the State submits its plan. § 110(a)(2), 42 U. S. C. § 7410(a)(2) (1982 ed.). Specifically, the provision requires EPA to act within "four months after the date required for submission of a plan." This seems to us to refer only to the action required on the original SIP. Section 110(a)(2), by its terms, therefore does not impose such a time restraint on EPA review of a SIP *revision*.

Petitioner nevertheless claims that § 110(a)(3) requires EPA to act on a proposed SIP revision within four months. That provision requires the Administrator to approve "any revision of an implementation plan . . . if he determines that it meets the requirements of paragraph (2) [§ 110(a)(2)] and has been adopted by the State after reasonable notice and

---

[1] See, *e. g.*, *American Cyanamid Co.* v. *EPA*, 810 F. 2d 493 (CA5 1987); *Duquesne Light Co.* v. *EPA*, 225 U. S. App. D. C. 290, 698 F. 2d 456 (1983).

public hearings."  Petitioner contends that the reference to § 110(a)(2) was intended to incorporate both the substantive and the procedural requirements of that provision.  Brief for Petitioner 13.

We are not persuaded.  The Administrator is to approve the proposed revision if he determines that "it"—that is, the revision—meets the substantive requirements imposed on a SIP by § 110(a)(2).  There is no requirement that "he"—that is, the Administrator—meet the deadline of that section. Petitioner's reading, moreover, makes nonsense of the further requirement in § 110(a)(3) that the Administrator find that the proposed revision "has been adopted by the State after reasonable notice and public hearings."  If, as petitioner contends, § 110(a)(3) incorporates the procedural provisions of § 110(a)(2), it surely incorporates § 110(a)(2)'s requirement that the Administrator find that the SIP was adopted after reasonable notice and hearing.  The separate mention in § 110(a)(3) of the notice and hearing requirement demonstrates that it does not simply incorporate every direction of § 110(a)(2); and since § 110(a)(3) does not separately require the Administrator to process a proposed revision within four months, we are not free to read that limitation into the statute.

This suffices to dispose of petitioner's contention, but if additional support is needed, it is available.  The statute elsewhere explicitly imposes upon the Administrator deadlines of the kind that petitioner would insert into § 110(a)(3).  Indeed, the very next provision of the Act contains just such an express time restraint on EPA approval of a SIP revision. See § 110(a)(3)(B) (with respect to certain SIP revisions for fuel-burning stationary sources, "[t]he Administrator shall approve or disapprove any revision no later than three months after its submission").  For other examples of explicit deadlines in the Clean Air Act, see § 110(c)(1) (6-month deadline for imposition of federal implementation "plan (or revision thereof)"); § 113(d)(2) (90-day deadline for review of

state-issued delayed compliance order). Since the statutory language does not expressly impose a 4-month deadline and Congress expressly included other deadlines in the statute, it seems likely that Congress acted intentionally in omitting the 4-month deadline in § 110(a)(3)(A). See *Russello* v. *United States*, 464 U. S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion,'" quoting *United States* v. *Wong Kim Bo*, 472 F. 2d 720, 722 (CA5 1972)).

Petitioner's final contention is that § 110(g) imposes a 4-month limitation on EPA's action on a proposed SIP revision. That section provides:

"(1) In the case of any State which has adopted and submitted to the Administrator a proposed plan revision which the State determines—

"(A) meets the requirements of this section, and

"(B) is necessary (i) to prevent the closing for one year or more of any source of air pollution, and (ii) to prevent substantial increases in unemployment which would result from such closing, and which the Administrator has not approved or disapproved under this section *within the required four month period,* the Governor may issue a temporary emergency suspension of the part of the applicable implementation plan for such State which is proposed to be revised with respect to such source. . . .

"(2) A temporary emergency suspension issued by a Governor under this subsection shall remain in effect for a maximum of four months . . . ." (Emphasis added.)

According to petitioner, § 110(g) on its own terms "require[s]" the Administrator to process a proposed revision within a "four month period." Reply Brief for Petitioner 7.

This is petitioner's strongest claim, but we are constrained to reject it. Section 110(g) does not, by its terms, *require*

the Administrator to take any action. It merely authorizes the Governor to suspend the existing SIP if certain action has occurred. True, it *presupposes* that some "four month period" is "required," but the incorporation of that mistaken presupposition does not, of itself, create a general requirement that the Administrator process all proposed revisions within four months.[2] Whatever may be the correct interpretation of § 110(g)'s "required four month period," we do not think this passing mention can be inflated into a requirement that the Administrator process each and every proposed revision within four months.

## IV

Although the 4-month deadline does not apply, EPA remains subject to the Administrative Procedure Act's (APA's) statutory requirements of timeliness. The APA requires agencies to conclude matters "within a reasonable time," 5 U. S. C. § 555(b), and provides a remedy for agency action "unreasonably delayed," 5 U. S. C. § 706(1). The Government concedes, as we think it must, that its action on a proposed SIP revision is subject to that mandate. Brief for United States 19–20.

Petitioner's main claim is that any delay over four months is categorically unreasonable because it violates EPA's statu-

---

[2] Even supposing, moreover, that § 110(g) does create some new requirement, it is not at all clear that the requirement is a general obligation on the part of the Administrator to process every proposed revision within four months. That section says only that the Governor may suspend the SIP if the State has submitted a proposed revision which, among other things, "the Administrator has not approved or disapproved under this section within the required four month period." The "required four month period" simply could impose a waiting period on the Governor; before he suspends the existing SIP, he must give the Administrator four months to consider the proposed revision. The Administrator is not always obliged to process a proposed revision within four months, although he may be constrained to act on certain proposals in that period if he wants to prevent the Governor from exercising his prerogative under § 110(g).

tory duty to process a revision within that period. We have rejected that claim above, but we nevertheless must consider petitioner's alternative contention that EPA may not bring an action to enforce an existing SIP if it unreasonably delays in acting on the proposed revision. Without deciding whether the delay in this case was unreasonable, we now address this claim. Because the statute does not reveal any congressional intent to bar enforcement of an existing SIP if EPA delays unreasonably in acting on a proposed SIP revision, we agree with the Court of Appeals that such an enforcement action is not barred.

The language of the Clean Air Act plainly states that EPA may bring an action for penalties or injunctive relief whenever a person is in violation of any requirement of an "applicable implementation plan." § 113(b)(2), 42 U. S. C. § 7413(b)(2) (1982 ed.). There can be little or no doubt that the existing SIP remains the "applicable implementation plan" even after the State has submitted a proposed revision. The statute states: "For purposes of this chapter, an applicable implementation plan is the implementation plan, or most recent revision thereof, which has been approved under [§ 110(a), 42 U. S. C. § 7410(a) (1982 ed.),] or promulgated under [110(c), 42 U. S. C. § 7410(c) (1982 ed.),] and which implements the requirements of this section." § 110(d), 42 U. S. C. § 7410(d) (1982 ed.). Both this Court and the Courts of Appeals have recognized that the approved SIP is the applicable implementation plan during the time a SIP revision proposal is pending. See, e. g., *Train* v. *Natural Resources Defense Council, Inc.*, 421 U. S. 60, 92 (1975); *United States* v. *Alcan Foil Products Division of Alcan Aluminum Corp.*, 889 F. 2d 1513, 1519 (CA6 1989), cert. pending, No. 89–1104; *United States* v. *Wheeling-Pittsburgh Steel Corp.*, 818 F. 2d 1077, 1084 (CA3 1987); *Duquesne Light Co.* v. *EPA*, 225 U. S. App. D. C. 290, 305, 698 F. 2d 456, 471 (1983). The commentators agree with this conclusion. See D. Currie, Air Pollution: Federal Law and Analysis § 8.07,

n. 14 (Supp. 1990); 1 W. Rodgers, Environmental Law: Air and Water § 3.39(c) (1986 and Supp. 1988).

There is nothing in the statute that limits EPA's authority to enforce the "applicable implementation plan" solely to those cases where EPA has not unreasonably delayed action on a proposed SIP revision. Moreover, we find it significant that Congress expressly enacted an enforcement bar elsewhere in the statute. See § 113(d)(10); 42 U. S. C. § 7413(d)(10) (1982 ed.) ("During the period of the order . . . no Federal enforcement action pursuant to this section and no action under section 304 of this Act shall be pursued against such owner. . . ."). The fact that Congress explicitly enacted an enforcement bar similar to the one proposed by petitioner in one section of the statute, but failed to do so in the section at issue in this case reinforces our refusal to import such a bar here. See *Russello* v. *United States*, 464 U. S., at 23.[3]

We note that other statutory remedies are available when EPA delays action on a SIP revision.[4] Although these statutory remedies may not appear to be so strong a deterrent to EPA delay as would an enforcement bar, these are the remedies that Congress has provided in the statute.[5] Cf. *Brock*

---

[3] Our conclusion is further supported by the language of § 110(g), 42 U. S. C. § 7410(g) (1982 ed.), discussed above. Section 110(g) grants certain authority to a State's Governor to suspend the existing SIP after four months. As the Court of Appeals discerned, 876 F. 2d 1060, 1069, n. 6 (CA1 1989), there would have been no reason for Congress to add that section if the existing SIP automatically became unenforceable after some period of EPA delay. The existence of this explicit exception indicates that in all other circumstances the existing SIP remains in effect.

[4] As the Court of Appeals observed, the statutory remedies for EPA inaction include a suit to compel agency action under § 304(a)(2), 42 U. S. C. § 7604(a)(2) (1982 ed.), and a request pursuant to § 113(b), 42 U. S. C. § 7413(b) (1982 ed.), for reduction or elimination of penalties during any period in which unreasonable agency delay results in prejudice. 876 F. 2d, at 1067–1068.

[5] The Commonwealth of Massachusetts, the State whose interests are involved here, in a brief joined by 12 other States, asserts that its interest

v. *Pierce County*, 476 U. S. 253, 260 (1986) ("We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act" (footnote omitted)). In the absence of a specific provision suggesting that Congress intended to create an enforcement bar, we decline to infer one.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

is better served by preserving EPA's ability to enforce the Act. See Brief for Massachusetts et al. as *Amici Curiae* 10–12.