# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PACIFIC MERCHANT SHIPPING
ASSOCIATION, a California Mutual
Benefit Corporation,
               *Plaintiff-Appellee,*

v.

JAMES GOLDSTENE,* Executive
Officer of the California Air
Resources Board,
               *Defendant-Appellant,*

COALITION FOR CLEAN AIR, INC.;
NATURAL RESOURCES DEFENSE
COUNCIL, INC.; SOUTH COAST AIR
QUALITY MANAGEMENT DISTRICT;
CITY OF LONG BEACH,
  *Defendant-Intervenors-Appellants.*

No. 07-16695

D.C. No.
CV-06-02791-WBS

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted
February 12, 2008—San Francisco, California

Filed February 27, 2008

Before: Barry G. Silverman, M. Margaret McKeown, and
Richard C. Tallman, Circuit Judges.

*James Goldstene is substituted for his predecessor, Thomas Cackette, as Executive Officer of the California Air Resources Board, pursuant to Fed. R. App. P. 43(c)(2).

Opinion by Judge Silverman

## COUNSEL

Nicholas Stern, Deputy Attorney General of the State of California, Sacramento, California, for the defendant-appellant.

Barbara Baird, District Counsel, Diamond Bar, California; David Pettit, Natural Resources Defense Council, Santa Monica, California; Jay M. Spillane, Spillane Shaeffer Aronoff

Bandlow LLP, Los Angeles, California; Dominic T. Holzhaus, Principal Deputy City Attorney for City of Long Beach, Long Beach, California, for the intervenors-appellants.

Erich P. Wise, Flynn, Delich & Wise LLP, Long Beach, California, for the plaintiff-appellee.

Janice K. Raburn, American Petroleum Institute, Washington, DC; Kevin M. Fong, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California, for the amicus.

---

## OPINION

SILVERMAN, Circuit Judge:

On January 1, 2007, the California Air Resources Board began enforcing state regulations, the "Marine Vessel Rules," limiting emissions from the auxiliary diesel engines of ocean-going vessels within twenty-four miles of California's coast. The Pacific Merchant Shipping Association, a group of companies that own or operate ocean-going vessels subject to the Marine Vessel Rules, filed suit to enjoin their enforcement because, they argue, the Rules are preempted by the Clean Air Act, 42 U.S.C. §§ 7401-7671q, and the Submerged Lands Act, 43 U.S.C. §§ 1301-1302. We affirm the district court's ruling that the Marine Vessel Rules are preempted by the Clean Air Act and we reinstate that court's injunction against enforcement of the Marine Vessel Rules.

### I.   Facts

The Clean Air Act Amendments of 1990 created a scheme for the regulation of emissions from nonroad sources such as lawnmowers, bulldozers, locomotives, and marine vessels. *See Engine Mfrs. Ass'n v. U.S. Envtl. Prot. Agency*, 88 F.3d 1075, 1078 (D.C. Cir. 1996) ("*EMA*"). The amendments gov-

erning emissions from nonroad sources reflect the basic structure of the Clean Air Act, which "makes the States and the Federal Government partners in the struggle against air pollution," but sought to avoid "an anarchic patchwork of federal and state regulatory programs." *EMA*, 88 F.3d at 1078, 1079 (quotation omitted). The 1990 amendments granted the federal government the authority to promulgate "regulations containing standards applicable to emissions from . . . new nonroad engines and new nonroad vehicles." Clean Air Act § 213(a)(3), 42 U.S.C. § 7547(a)(3).[1] On the other hand, Congress expressly preempted state regulation of emissions from new engines used in construction and farm equipment, new engines smaller than 175 horsepower, and new locomotive engines. Clean Air Act § 209(e)(1), 42 U.S.C. § 7543(e)(1).[2]

---

[1]Section 213(a)(3) provides:

> If the Administrator makes an affirmative determination under paragraph (2) the Administrator shall, within 12 months after completion of the study under paragraph (1), promulgate (and from time to time revise) regulations containing standards applicable to emissions from those classes or categories of new nonroad engines and new nonroad vehicles (other than locomotives or engines used in locomotives) which in the Administrator's judgment cause, or contribute to, such air pollution. Such standards shall achieve the greatest degree of emission reduction achievable through the application of technology which the Administrator determines will be available for the engines or vehicles to which such standards apply, giving appropriate consideration to the cost of applying such technology within the period of time available to manufacturers and to noise, energy, and safety factors associated with the application of such technology. In determining what degree of reduction will be available, the Administrator shall first consider standards equivalent in stringency to standards for comparable motor vehicles or engines (if any) regulated under section 7521 of this title, taking into account the technological feasibility, costs, safety, noise, and energy factors associated with achieving, as appropriate, standards of such stringency and lead time. The regulations shall apply to the useful life of the engines or vehicles (as determined by the Administrator).

[2]Section 209(e)(1) provides:

> No State or any political subdivision thereof shall adopt or

For other nonroad engines and vehicles, § 209(e)(2) of the Clean Air Act allows California to seek authorization from the EPA to adopt "standards and other requirements relating to the control of emissions." *Id.* § 7543(e)(2)(A).[3] Section 209(e)(2) provides in pertinent part:

attempt to enforce any standard or other requirement relating to the control of emissions from either of the following new nonroad engines or nonroad vehicles subject to regulation under this chapter—

(A)   New engines which are used in construction equipment or vehicles or used in farm equipment or vehicles and which are smaller than 175 horsepower.

(B)   New locomotives or new engines used in locomotives.

Subsection (b) of this section shall not apply for purposes of this paragraph.

[3]Section 209(e)(2) provides:

(A)   In the case of any nonroad vehicles or engines other than those referred to in subparagraph (A) or (B) of paragraph (1), the Administrator shall, after notice and opportunity for public hearing, authorize California to adopt and enforce standards and other requirements relating to the control of emissions from such vehicles or engines if California determines that California standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards. No such authorization shall be granted if the Administrator finds that—

(i)   the determination of California is arbitrary and capricious,

(ii) California does not need such California standards to meet compelling and extraordinary conditions, or

(iii) California standards and accompanying enforcement procedures are not consistent with this section.

(B)   Any State other than California which has plan provisions approved under part D of subchapter I of this chapter may adopt and enforce, after notice to the Administrator, for any period, standards relating to control of emissions from nonroad vehicles or engines (other than those referred to in subparagraph (A) or (B) of paragraph (1)) and take such other actions as are referred to in subparagraph (A) of this paragraph respecting such vehicles or engines if—

In the case of any nonroad vehicles or engines other than those referred to in subparagraph (A) or (B) of paragraph (1), the Administrator shall, after notice and opportunity for public hearing, authorize California to adopt and enforce *standards and other requirements relating to the control of emissions* from such vehicles or engines if California determines that California standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards.

*Id.* § 7543(e)(2) (emphasis added). Other states can adopt regulations identical to California's regulations approved by the EPA. *Id.* § 7543(e)(2)(B). The Board has neither sought nor obtained § 209(e)(2) authorization from the EPA for the Marine Vessel Rules.

Nonetheless, on January 1, 2007, the California Air Resources Board began enforcing the Marine Vessel Rules it promulgated regarding the emission of particulate matter ("PM"), nitrogen oxide ("NOx"), and sulfur oxide ("SOx") from ocean-going vessels on all waters within twenty-four nautical miles of the California coast. Cal. Code Regs. tit. 13, § 2299.1(a), 2299.1(b)(1).[4] The Marine Vessel Rules apply to

(i)   such standards and implementation and enforcement are identical, for the period concerned, to the California standards authorized by the Administrator under subparagraph (A), and

(ii)   California and such State adopt such standards at least 2 years before commencement of the period for which the standards take effect.

The Administrator shall issue regulations to implement this subsection.

[4]Section 2299.1(a) provides: "The purpose of this section is to reduce emissions of diesel particulate matter (PM), nitrogen oxides, and sulfur oxides from the use of auxiliary diesel engines and diesel-electric engines on ocean-going vessels within any of the waters subject to this regulation ("Regulated California Waters")."

the emissions of "auxiliary diesel engines," which are engines "designed primarily to provide power for uses other than propulsion" and used for on-board electricity needs. *Id.* § 2299.1(d)(2). Such engines are typically powered by residual fuel, commonly called bunker fuel in the maritime industry, which has an average sulfur content of 2.5 percent by weight. The Rules provide, in pertinent part:

(e)   Requirements.

　　(1)   Emission Limits.

---

Section 2299.1(b)(1) provides:

(1)   Except as provided in subsection (c), this section applies to any person who owns, operates, charters, rents, or leases any ocean-going vessel that operates in any of the Regulated California Waters, which include all of the following:

(A)   all California internal waters;

(B)   all California estuarine waters;

(C)   all California ports, roadsteads, and terminal facilities (collectively "ports");

(D)   all waters within 3 nautical miles of the California baseline, starting at the California-Oregon border and ending at the California-Mexico border at the Pacific Ocean, inclusive;

(E)   all waters within 12 nautical miles of the California baseline, starting at the California-Oregon border and ending at the California-Mexico border at the Pacific Ocean, inclusive;

(F)   all waters within 24 nautical miles of the California baseline, starting at the California-Oregon border to 34.43 degrees North, 121.12 degrees West, inclusive; and

(G)   all waters within the area, not including islands, between the California baseline and a line starting at 34.43 degrees North, 121.12 degrees West; thence to 33.50 degrees North, 118.58 degrees West; thence to 32.48 degrees North, 117.67 degrees West; and ending at the California-Mexico border at the Pacific Ocean, inclusive.

> Except as provided in subsections (c), (g) and (h), no person subject to this section shall operate any auxiliary diesel engine, while the vessel is operating in any of the Regulated California Waters, *which emits levels of diesel PM, NOx, or SOx in exceedance of the emission rates* of those pollutants that would result had the engine used the following fuels: [specified fuels omitted].

*Id.* § 2299.1(e)(1) (emphasis added).[5] In sum, the emissions of any auxiliary diesel engine must not exceed "the emission rates . . . that would result had the engine used the [specified] fuels" with a sulfur content of no more than 0.5 percent by weight. *Id.*

Compliance with the Marine Vessel Rules is presumed where a vessel uses the specified fuels. *Id.* § 2299.1(e)(1)(C). However, a vessel owner may also comply by "alternative

---

[5]Section 2299.1(e)(1) provides in full:

(e)   Requirements.

(1)   Emission Limits.

Except as provided in subsections (c), (g) and (h), no person subject to this section shall operate any auxiliary diesel engine, while the vessel is operating in any of the Regulated California Waters, which emits levels of diesel PM, NOx, or SOx in exceedance of the emission rates of those pollutants that would result had the engine used the following fuels:

(A)   Beginning January 1, 2007: 1. marine gas oil, as defined in subsection (d); or 2. marine diesel oil, as defined in subsection (d), with a sulfur content of no more than 0.5 percent by weight;

(B)   Beginning January 1, 2010: marine gas oil with a sulfur content of no more than 0.1 percent by weight.

(C)   Compliance with subsection (e)(1) is presumed if the person operates the regulated engine(s) with the fuels specified in subsection (e)(1)(A) and (e)(1)(B).

emission control strategies . . . [that] result in emissions . . . that are no greater than the emissions that would have occurred" using the specified fuels. *Id.* § 2299.1(g)(1)(A). The Marine Vessel Rules exempt, among others, vessels traversing the regulated waters but not entering or stopping at a port in California and vessels owned or operated by a local, state, federal or foreign government. *Id.* §§ 2299.1(c)(1), 2299.1(c)(3).

The Pacific Merchant Shipping Association ("PMSA") is a mutual benefit corporation organized to support the legislative, legal, and administrative interests of its members, who are companies that own or operate ocean-going vessels subject to the Marine Vessel Rules. PMSA filed suit against the Board in district court seeking to enjoin California from enforcing the Marine Vessel Rules. PMSA argued that the Marine Vessel Rules are invalid because the Board failed to obtain the EPA authorization required by the Clean Air Act prior to enforcing the Marine Vessel Rules, and the Submerged Lands Act preempts application of the Marine Vessel Rules outside of California's boundary.

The district court granted PMSA's motion for summary judgment on PMSA's Clean Air Act claim and did not rule on the Submerged Lands Act claim. The district court held that the Marine Vessel Rules are preempted by § 209(e)(2) of the Clean Air Act because the regulations are emission "standards" and not so-called "in-use requirements" that merely regulate how vehicles may be used. The district court found the regulations to be emissions standards "[b]ecause the regulations set numerical requirements for the reduction of emissions relating to particular emissions rather than a fleet as a whole." *Pac. Merch. Shipping Ass'n v. Cackette*, No. S-06-2791 (E.D. Cal. Aug. 30, 2007) (order granting summary judgment).

The Board and intervening parties Natural Resources Defense Council, Inc., Coalition for Clean Air, Inc., South

Coast Air Quality Management District, and the City of Long Beach (collectively "Intervenors") appeal the district court's decision. We previously stayed the district court's order enjoining enforcement pending appeal. *Pac. Merch. Shipping Ass'n v. Goldstene*, No. 07-16695 (9th Cir. Oct. 23, 2007).

## II.  Analysis

We have jurisdiction to review the district court's final order granting summary judgment. 28 U.S.C. § 1291. A district court order granting summary judgment is reviewed de novo. *See Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1124 (9th Cir. 2002). Summary judgment is proper if the record, viewed in the light most favorable to the non-moving party, discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004).

**[1]** The parties agree that the ocean-going vessels regulated by the Marine Vessel Rules are nonroad vehicles for purposes of Clean Air Act § 209. Marine vessels are not expressly preempted under Clean Air Act § 209(e)(1). 42 U.S.C. § 7543(e)(1). For nonroad engines and vehicles not covered by § 209(e)(1), Clean Air Act § 209(e)(2) creates a sphere of implied preemption surrounding those regulations for which California must obtain authorization. *See EMA*, 88 F.3d at 1087-88. The issue in dispute here is whether the scope of the implied preemption of § 209(e)(2) includes the Marine Vessel Rules. We hold it does.

The Board contends that since the Marine Vessel Rules apply only to non-new engines, the Rules are not preempted if § 209(e)(2) only applies to new engines. In 1996, the D.C. Circuit directly addressed this issue when it considered whether the EPA's rules—which interpreted the implied preemption of § 209(e)(2) to apply only to new engines—were

entitled to deference under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). *EMA*, 88 F.3d at 1082, 1084. After an exhaustive review of the text and legislative history, the D.C. Circuit held that the implied preemption of § 209(e)(2) applies to both new and non-new engines. *Id.* at 1087-1093.

**[2]** The district court adopted the holding of the *EMA* majority that the implied preemption of § 209(e)(2) applies both to new and non-new engines. So do we, because it is sound and because neither the EPA nor Congress has challenged the *EMA* holding in the nearly twelve years since it was decided. Thus, we join the D.C. Circuit and hold that the implied preemption of § 209(e)(2) applies to "any nonroad vehicles or engines," including new and non-new sources.

## A.  The Marine Vessel Rules are Emission Standards

**[3]** Section 209(e)(2)(A) of the Clean Air Act requires California to obtain EPA authorization in order to adopt "standards and other requirements relating to the control of emissions from [ ] vehicles or engines." 42 U.S.C. § 7543(e)(2)(A). The key issue in this case is whether the Marine Vessel Rules constitute "standards . . . relating to the control of emissions from [ ] vehicles or engines," and thus are preempted, or whether the Rules are mere "in-use requirements" under § 209(d) that are not preempted. We hold that they are standards.

**[4]** First, by their very terms, the Rules explicitly prohibit the operation of auxiliary diesel engines "which emit[ ] levels of diesel PM, NOx, or SOx in exceedance of the emission rates" that would result from the use of certain fuels. Cal. Code Regs. tit. 13, § 2299.1(e)(1). Those rates are susceptible to precise quantification. As the Supreme Court made clear in *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004) ("*SCAQMD*"), this sort of regulation is a "standard." In *SCAQMD*, the Court considered whether regulations that prohibited the purchase or lease of motor vehicles

that do not comply with certain emissions requirements were preempted standards under § 209(a) of the Clean Air Act. 541 U.S. at 248-49. Although it defined "standard" under § 209(a), the Court indicated that its definition of "standard" is applicable throughout Title II of the Clean Air Act, which includes § 209(e). *Id.* at 254. Indeed, § 209(e) contains the phrase "standard or requirement relating to the control of emissions," which is essentially identical to § 209(a)'s "standard relating to the control of emissions."

The Court commenced its analysis by examining the ordinary meaning of § 209(a) and turned to the dictionary, which defines "standard" as "that which 'is established by authority, custom, or general consent, as a model or example; criterion; test.' " *Id.* at 252-53 (quoting Webster's Second New International Dictionary 2455 (1945)). The Court then expanded on this definition:

> The criteria referred to in § 209(a) relate to the emission characteristics of a vehicle or engine. To meet them the vehicle or engine must not emit more than a certain amount of a given pollutant, must be equipped with a certain type of pollution-control device, or must have some other design feature related to the control of emissions. This interpretation is consistent with the use of "standards" throughout Title II of the [Clean Air Act] (which governs emissions from moving sources) to denote requirements such as numerical emission levels with which vehicles or engines must comply, *e.g.*, 42 U.S.C. § 7521(a)(3)(B)(ii), or emission -control technology with which they must be equipped, *e.g.*, § 7521(a)(6).

*Id.* at 253.

The Marine Vessel Rules plainly fit within the *SCAQMD* definition of "standards" as a requirement that a "vehicle or

engine must not emit more than a certain amount of a given pollutant." 541 U.S. at 253. The Marine Vessel Rules require that engines "not emit more than" the amount of diesel PM, NOx, or SOx they would emit if using the specified fuels. Cal. Code Regs. Tit. 13 § 2299.1(e)(1).

**[5]** It is no answer that the Marine Vessel Rules allow a vessel operator to use the specified fuel to meet the standard. The Marine Vessel Rules set a standard for engine emissions; the means of compliance are irrelevant. *See SCAQMD*, 541 U.S. at 253 ("[S]tandards themselves are separate from . . . enforcement techniques."). Even if vessel operators may comply with the Marine Vessel Rules by fuel switching, the emission limits set by the Marine Vessel Rules are analyzed separately from these means of compliance. *See id.*

## B. The Marine Vessel Rules are Not Mere "In-Use Requirements."

**[6]** Section 209(d) of the Clean Air Act reserves to the states "the right . . . to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles." 42 U.S.C. § 7543(d). Section 209(d) allows states to impose so-called "in-use requirements," including "carpool lanes, restrictions on car use in downtown areas, and programs to control extended idling of vehicles." *EMA*, 88 F.3d at 1094 (citation omitted). The EPA interprets the Clean Air Act to extend this allowance of in-use requirements to regulations of nonroad engines. Preemption of State Regulation for Nonroad Engine and Vehicle Standards, 59 Fed. Reg. 36,969, 36,973-74 (July 20, 1994). In *EMA*, the court held that "*Chevron* deference permits the EPA's interpretation . . . incorporat[ing] into the nonroad regime at least the reservation of the states' right to impose in-use regulations found in § 209(d)." *EMA*, 88 F.3d at 1094.

**[7]** The Board and Intervenors argue that the Marine Vessel Rules are a permissible in-use requirement because the Rules

regulate the sulfur content of the fuel used by ocean-going vessels. However, the plain language of the Rules regulates emissions, not fuel. The Marine Vessel Rules create a limit on emissions (i.e. emissions must not be greater than what would be emitted using the specified fuels) that is presumed to be met if the specified fuels are used. Cal. Code Regs. tit. 13 § 2299.1(e). Supplying a presumed mode of compliance does not alter the nature of the general requirement limiting emissions. Indeed, the Marine Vessel Rules do not impose an in-use fuel requirement because no particular fuel is required to be used at all.

**[8]** In the end, Clean Air Act § 209(e)(2) preempts the Marine Vessel Rules and requires California to obtain EPA authorization prior to enforcement because the Rules are "emissions standards" that require that engines "not emit more than a certain amount of a given pollutant." *SCAQMD*, 541 U.S. at 253. Because the Clean Air Act preempts here, we, like the district court, find it unnecessary to decide whether the Submerged Lands Act also preempts the state rules at issue. We vacate the stay of the district court's injunction previously imposed by our motions panel effective upon issuance of the mandate.

**AFFIRMED.**