**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JENSEN FAMILY FARMS, INC., a
California corporation,
          *Plaintiff-Appellant,*

          v.

MONTEREY BAY UNIFIED AIR
POLLUTION CONTROL DISTRICT,
          *Defendant-Appellee,*

CALIFORNIA AIR RESOURCES BOARD,
    *Defendant-Intervenor-Appellee.*

No. 09-16790

D.C. No.
5:08-cv-05003-JW

OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, Chief District Judge, Presiding

Submitted November 4, 2010*
San Francisco, California

Filed May 27, 2011

Before: Richard A. Paez and Carlos T. Bea, Circuit Judges,
and Kevin Thomas Duffy, District Judge.**

Opinion by Judge Paez

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Kevin Thomas Duffy, Senior United States District
Judge for the Southern District of New York, sitting by designation.

## COUNSEL

Matthew S. Hale, Newport News, Virginia; for plaintiff-appellant Jensen Family Farms, Inc.

Charles J. McKee, County Counsel, and Leslie J. Girard, Assistant County Counsel, County of Monterey, Salinas, California; for defendant-appellee Monterey Bay Unified Air Pollution Control District.

Edmund G. Brown, Attorney General, and Kathleen Kenealy and Gavin G. McCabe, Deputy Attorneys General, San Francisco, California; for defendant-intervenor-appellee California Air Resources Board.

## OPINION

PAEZ, Circuit Judge:

In 2007, the Monterey Bay Unified Air Pollution Control District (District) adopted and began enforcing rules that regulate diesel-powered engines. In particular, the District's regulatory regime: (1) requires owners and operators to register and pay fees for certain diesel engines used in agricultural operations, and (2) sets emissions standards for stationary diesel engines within the District. The principal question in this case—among other questions—is whether the District's rules are preempted by the federal Clean Air Act (CAA), 42 U.S.C. §§ 7401 et seq. We hold that the District rules are not preempted, and affirm the district court's judgment on the pleadings in favor of the defendants.

## I.  FACTS

Jensen Family Farms, Inc. (Jensen) is a for-profit agricultural corporation that is incorporated under the laws of California and has its principle place of business in Monterey, California. As part of its operations, Jensen owns and operates diesel engines, including both stationary and portable diesel engines. Jensen uses diesel engines to provide power to irrigation pumps on its farms.

The California Air Resources Board (CARB) is California's air pollution control agency. Cal. Health & Safety Code § 39602. Under California law, CARB is required to adopt airborne toxic control measures (ATCMs) for toxic air contaminants emitted from nonvehicular sources. *Id.* § 39666(a). In 1998, CARB determined that particulate matter emissions from diesel-fueled engines were a toxic air contaminant. Accordingly, in 2004, CARB adopted an ATCM to address diesel particulate matter emissions. *See* Cal. Code Regs. tit. 17, § 93115 et seq.

The District is a political subdivision of the State of California, and comprises Monterey, Santa Cruz, and San Benito Counties. Under state law, the District has primary responsibility for controlling air pollution from all sources other than motor vehicle emissions for its three constituent counties. Cal. Health & Safety Code § 40000. Shortly after CARB adopts an ATCM, the District is required to either implement and enforce the ATCM, or adopt and enforce an equally effective or more stringent regulation (sometimes referred to as a "replacement rule"). Cal. Health & Safety Code § 39666(d).

In May 2007, the District adopted Rules 220, 310, and 1010 (collectively, the "Rules"). Rule 220 requires owners or operators of diesel engines to register with the District any diesel engine of 50 brake horsepower ("bhp") or larger that is used for agricultural operations. Rule 310 imposes application fees and annual registration fees on the owners and operators

of engines that are subject to Rule 220's registration scheme. In February 2008, Jensen registered several engines with the District and paid the required fees. Rule 1010—the third District rule that Jensen challenges—sets emissions standards for stationary diesel engines. Rule 1010 is a "replacement rule" for CARB's ATCM for diesel particulate matter. *See* Cal. Code Regs. tit. 17, § 93115 et seq.

In November 2008, Jensen sued the District, alleging that: (1) all of the District's Rules are preempted by the CAA; (2) Rules 220 and 310 violate certain provisions of California law; and (3) the Rules violate Jensen's due process rights. After the District filed its answer, Jensen moved for summary judgment and a permanent injunction. While Jensen's motion was pending, the district court granted CARB's motion to intervene. The District and CARB (collectively, "Defendants") then filed a joint motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). After hearing argument on both Jensen's and Defendants' motions, the court entered a final judgment granting Defendants' motion for judgment on the pleadings and denying Jensen's motion for summary judgment and permanent injunctive relief.

The district court first concluded that Rules 220 and 310 are not preempted by the CAA because Rules 220 and 310 are not "standards or other requirements relating to the control of emissions." The district court also rejected Jensen's claim that Rules 220 and 310 violate California law. The district court next held that because Rule 1010 applies only to stationary sources, it is not preempted by the CAA. Finally, the district court rejected Jensen's due process challenge after concluding that there was a rational basis for the Rules. Jensen timely appealed the district court's judgment.[1]

---

[1]We have jurisdiction to review the district court's judgment on the pleadings, 28 U.S.C. § 1291, and we review this judgment de novo. *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). Judgment on the plead-

## II.  ANALYSIS

### A.  Federal Preemption

**[1]** We start with an overview of the federal Clean Air Act (CAA). The CAA makes "the States and the Federal Government partners in the struggle against air pollution." *General Motors Corp. v. United States*, 496 U.S. 530, 532 (1990). "The basic structure of this partnership has not changed" since the CAA's inception. *Engine Mfrs. Ass'n v. EPA* ("*EMA*"), 88 F.3d 1075, 1078 (D.C. Cir. 1996).

**[2]** The CAA governs emissions from both stationary and mobile sources.[2] The direct regulation of emissions from stationary sources is primarily left to the states. CAA § 116, 42 U.S.C. § 7416; *see also EMA*, 88 F.3d at 1079 (describing a "history of detailed state regulation of stationary sources"). On the other hand, the federal government sets nationwide emissions standards for mobile sources.[3] The category of "mobile sources" includes both motor vehicles and "nonroad" sources. *See* CAA § 202, 42 U.S.C. § 7521 (giving the Administrator of the Environmental Protection Agency (EPA) the authority to set emissions standards for new motor vehi-

---

ings under Rule 12(c) is proper when the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Because we ultimately affirm the district court's Rule 12(c) judgment for Defendants, we do not separately address whether the district court abused its discretion in denying Jensen's motion for a permanent injunction.

[2]In particular, Title I of the Clean Air Act regulates stationary sources, while Title II addresses mobile sources. *EMA*, 88 F.3d at 1078-79.

[3]The notable exception to this general rule is that California is permitted to set its own mobile source emissions standards so long as it obtains EPA approval. CAA § 209(b), 42 U.S.C. § 7543(b) (motor vehicles); CAA § 209(e)(2), 42 U.S.C. § 7543(e)(2) (nonroad sources). Because none of the District's Rules have been authorized by the EPA, this exception does not affect this case.

cles); CAA § 213, 42 U.S.C. § 7547 (same for nonroad sources). Because the regulation of mobile source emissions is a federal responsibility, Congress has expressly preempted states from setting emissions standards for mobile sources. CAA § 209(a), 42 U.S.C. § 7543(a) (preempting state regulation of new motor vehicle emissions); CAA § 209(e), 42 U.S.C. § 7543(e) (preempting state regulation of emissions from nonroad mobile sources). We consider Jensen's federal preemption claims against this backdrop.

1.  *District Rules 220 and 310*

District Rule 220 provides that "[b]efore any 50 bhp or larger diesel engine or engines may be operated, the owner or operator shall register such engine(s) by submitting [registration information] to the District. . . ." Rule 220's registration requirements apply only to "diesel engine[s] of 50 brake horsepower or larger utilized at an agricultural operation." District Rule 310 provides that "[e]very applicant for [a] diesel engine registration shall pay [a registration fee]."

**[3]** The registration and fee requirements of Rules 220 and 310 apply to diesel engines used at agricultural operations, which are nonroad sources. *See* CAA § 209(e)(1), 42 U.S.C. § 7543(e)(1) (describing as "nonroad" engines or vehicles used in farm equipment). Section 209(e) of the CAA expressly prohibits states from setting emissions standards for nonroad sources. In particular, section 209(e) provides:

> (1) Prohibition on certain State standards
>
> No State or any political subdivision thereof shall adopt or attempt to enforce any *standard or other requirement relating to the control of emissions* from either of the following new nonroad engines or nonroad vehicles subject to regulation under this chapter —

(A) New engines which are . . . used in farm equip-
ment or vehicles and which are smaller than 175
horsepower.

. . .

(2) Other nonroad engines or vehicles

(A) In the case of any nonroad vehicles or engines
other than those referred to in . . . paragraph (1), the
Administrator shall . . . authorize California to adopt
and enforce *standards and other requirements relat-
ing to the control of emissions* from such vehicles or
engines . . . .

42 U.S.C. § 7543(e) (emphasis added).

**[4]** Critically, the express preemption provision of
§ 209(e)(1) applies only to "standard[s] or other require-
ment[s] relating to the control of emissions" from certain *new*
nonroad engines and vehicles. Section 209(e)(2) addresses
other types of nonroad sources. *See EMA*, 88 F.3d at 1093
(rejecting EPA interpretation that § 209(e)(2) applies only to
*new* nonroad sources) (cited approvingly in *Pacific Merchant
Shipping Ass'n v. Goldstene* ("*Pacific Merchant*"), 517 F.3d
1108, 1113 (9th Cir. 2008)). Section 209(e)(2) requires Cali-
fornia to obtain EPA authorization before adopting "standards
or other requirements relating to the control of emissions"
from nonroad engines not covered by section 209(e)(1). We
have held that section 209(e)(2) "creates a sphere of implied
preemption surrounding those regulations for which Califor-
nia must obtain authorization." *Pacific Merchant*, 517 F.3d at
1113. "Any such standard or requirement that the EPA has
*not* duly authorized, therefore, is impliedly preempted by sec-
tion 209(e)(2)." *Nat'l Ass'n of Home Builders v. San Joaquin
Valley Unified Air Pollution Control Dist.*, 627 F.3d 730, 734
(9th Cir. 2010) (emphasis in original). Because the EPA has
not authorized Rules 220 and 310, our threshold task is to

decide whether these rules constitute "standards or other requirements relating to the control of emissions" from non-road engines. We conclude that they do not, and therefore are not preempted by § 209(e).

"[T]he task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Nonetheless, preemption language is to be "narrowly and strictly construed." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 474 (9th Cir. 2007).

**[5]** The word " 'standard' is defined as that which 'is established by authority, custom, or general consent, as a model or example; criterion; test.' " *Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist.* ("*South Coast*"), 541 U.S. 246, 252-53 (2004) (quoting Webster's Second New International Dictionary 2455 (1945)). A commonsense reading of Rules 220 and 310 demonstrates that the registration and fee regime laid out in these rules does not amount to "standards or other requirements relating to the control of emissions." The requirements imposed by Rules 220 and 310 do not involve emissions control; they require owners and operators of certain diesel engines to provide information to the District about their engines and to pay fees. The plain language of Rules 220 and 310 has nothing to do with emissions standards or the control of emissions.

*South Coast* includes examples of requirements contained in Title II of the CAA that would properly be considered "standards relating to the control of emissions" for federal preemption purposes.[4] For example, a state regulation requir-

---

[4]Although *South Coast* interpreted the language of CAA § 209(a) (the CAA preemption provision for the regulation of *motor vehicle* emissions), we have applied the *South Coast* analysis to the preemption language of § 209(e) because both §§ 209(a) and (e) preempt state-imposed *standards relating to the control of emissions*. We presume that "identical words used in different parts of the same act are intended to have the same meaning." *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932).

ing that vehicles or engines not emit more than a certain amount of a given pollutant, *see, e.g.*, CAA § 202(a)(3)(B)(ii), 42 U.S.C. § 7521(a)(3)(B)(ii), is easily a "standard relating to the control of emissions." *South Coast*, 541 U.S. at 253. Similarly, requirements that a vehicle or engine be equipped with a certain type of pollution-control device, or that a vehicle or engine include some other design feature relating to emissions control, *see* CAA § 202(a)(6), 42 U.S.C. § 7521(a)(6), are also "standards relating to the control of emissions." *See South Coast*, 541 U.S. at 253.

Here there is little similarity between the examples laid out in *South Coast* and the registration and fee regime established by Rules 220 and 310. Rules 220 and 310 do not require that a vehicle or engine emit below a certain level of a given pollutant. *Cf. Pacific Merchant*, 517 F.3d at 1109. Nor do Rules 220 and 310 impose equipment or design requirements on vehicles or engines. *Cf. South Coast*, 541 U.S. at 253. Rules 220 and 310 simply require owners to register and pay fees for certain kinds of diesel engines. Neither Rule contains any reference to emissions, and we therefore cannot conclude that Rules 220 and 310 are "standards or other requirements relating to the control of emissions."

We are also confident that the registration and fee regime of Rules 220 and 310 is not the type of state action that Congress intended to preempt in § 209(e). In *EMA*, the D.C. Circuit carefully catalogued the congressional history and objectives of the CAA and explained the reasons for Congress's preemption of state mobile source emissions standards:

> The regulatory difference [that gave states control over stationary sources and retained federal control of mobile source emissions] is explained in part by the difficulty of subjecting motor vehicles, which readily move across state boundaries, to control by individual states. Congress had another reason for

asserting federal control in this area: the possibility of 50 different state regulatory regimes "raised the spectre of an anarchic patchwork of federal and state regulatory programs, a prospect which threatened to create nightmares for the manufacturers."

88 F.3d at 1079 (quoting *Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979)). Section 209(e) was presumably added to Title II of the CAA with the same objective of creating national uniformity in emissions rules for nonroad engines and vehicles. *See also EMA*, 88 F.3d at 1080 (noting that the 1990 amendments—which added § 209(e)— "add[ed] detail and refinements" to Title II but that the Title "also continue[d] the basic pre-1990 regime").

The registration and fee requirements of Rules 220 and 310 do not impose any requirements on manufacturers, nor do they threaten "an anarchic patchwork of federal and state regulatory programs." Because Rules 220 and 310 are only tenuously related to emissions standards, and because Rules 220 and 310 are likely outside the scope of state law that Congress intended to preempt, we conclude that Rules 220 and 310 are not preempted by section 209(e).

**[6]** Jensen contends that although Rules 220 and 310 do not directly control emissions, they are nonetheless preempted by § 209(e) because they "relate to" emissions control. We find this argument unconvincing. Jensen specifically argues that because the legislative mission of the District is to "control . . . air pollution from all sources [other than motor vehicles]," Cal. Health & Safety Code § 40000, Rules 220 and 310 necessarily relate to emissions standards. Under Jensen's logic, *every* rule promulgated by the District relating to nonroad engines and vehicles would be preempted by § 209(e). Such a broad reading of the "relating to" clause would render inconsequential the analysis contained in *South Coast*, which clarified the breadth of the word "standard." 541 U.S. at 252-53. Moreover, the Court did not suggest in *South Coast*

that the statutory mission of the governmental authority has a bearing on whether its air pollution regulations are federally preempted. We therefore decline to embrace Jensen's expansive interpretation of the term "relating to."

**[7]** We also disagree with Jensen that *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) dictates the broad definition of "relating to" that would encompass Rules 220 and 310. In *Morales*, the Court considered the term "relating to" in the preemption provision of the Airline Deregulation Act of 1978, which prohibits states from "enforcing any law relating to air carriers' rates, routes, or services." 504 U.S. at 374 (internal quotation marks omitted). The Court defined "relating to" as "having a connection with or reference to [the direct object of the phrase.]" *Id.* at 384 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). The Court left room, however, for state actions that are "too tenuous, remote, or peripheral . . . to have pre-emptive effect." *Id.* at 390 (internal quotation marks omitted); *see also New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661-62 (1995); *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998). Rules 220 and 310 fall into this category. Accordingly, we hold that Rules 220 and 310 are not "standards or other requirements relating to the control of emissions," and are therefore not preempted by CAA § 209(e).

### 2.   District Rule 1010

**[8]** Unlike Rules 220 and 310, Rule 1010 unquestionably sets emissions standards.[5] As explained above, then, Rule

---

[5]The emissions requirements for stationary diesel engines used in agricultural operations are contained at Rule 1010, Part 3.4, which provides:

No person shall sell, purchase, [ ] lease for use in the District [or operate] any new stationary diesel-fueled engine to be used in

1010 is preempted by the CAA insofar as it applies to non-road engines. CAA § 209(e). The district court held that Rule 1010 is not preempted because it applies only to stationary engines, which—by comparison of federal and state provisions here applicable—are mutually exclusive from nonroad engines. We agree.

**[9]** By its language, Rule 1010 only applies to "stationary" engines. Under Rule 1010, a "stationary" compression ignition (CI) engine is:

> [a] CI engine that is designed to stay in one location, or remains in one location. A CI engine is stationary if any of the following are true:
>
> the engine or its replacement is attached to a foundation [or] resides at the same location for more than 12 consecutive months . . . ; or
>
> the engine remains or will reside at a location for less than 12 consecutive months if the engine is located at a seasonal source and operates during the full annual operating period of the seasonal source . . . ; or
>
> the engine is moved from one location to another in an attempt to circumvent the 12 month residence time requirement. The period during which the engine is maintained at a storage facility shall be excluded from the residency time determination.

---

agricultural operations that has a rated brake horsepower greater than 50 . . . unless the engine meets all of the following emission performance standards (which are summarized in Table 5.). . . No owner or operator shall operate an in-use stationary diesel-fueled CI engine greater than 50 bhp in an agricultural operation in the District unless it meets the requirements in Subsections 3.4.2.1 and 3.4.2.3 (which are summarized in Tables 6 and 7).

On the other hand, the CAA implementing regulations make clear that an engine is *not* a nonroad engine when it:

> remains or will remain at a location for more than 12 consecutive months or a shorter period of time for an engine located at a seasonal source. . . . Any engine (or engines) that replaces an engine at a location and that is intended to perform the same or similar function as the engine replaced will be included in calculating the consecutive time period.

40 C.F.R. § 89.2. Thus, the federal definition of a "nonroad engine" and the District's definition of a "stationary CI engine" are mutually exclusive in all material aspects. We thus conclude that Rule 1010 does not apply to any "nonroad engines," as that term is used in the CAA.

[10] Jensen protests that engines subject to regulation under Rule 1010 are no different from diesel engines used on marine vessels, which we considered "nonroad" engines in *Pacific Merchant*. Jensen's reliance on *Pacific Merchant* is misplaced. In *Pacific Merchant* the parties agreed that the engines at issue were nonroad engines, but argued about whether the CARB rules in question amounted to "standards or other requirements relating to the control of emissions." 517 F.3d at 1110. In this case, the parties agree that Rule 1010 sets "standards relating to the control of emissions," but argue about whether Rule 1010 reaches nonroad engines. Thus, *Pacific Merchant* does not help Jensen's claim. Jensen essentially argues that its engines are "stationary" under Rule 1010, yet "nonroad" under the CAA. Comparing the plain language of 40 C.F.R. § 89.2 with the plain language of Rule 1010 precludes this argument. Accordingly, we hold that Rule 1010 is not preempted by section 209(e).

B.   Jensen's Remaining Claims

1.  *State Preemption*

**[11]**  Jensen advances two theories of "state preemption" of Rules 220 and 310. Jensen first argues that "insofar as [Rules 220 and 310] were issued pursuant to Cal. Code Regs. tit. 17, § 93116, they are preempted." Because Rules 220 and 310 were issued pursuant to Cal. Health and Safety Code §§ 39656, 39659 and 39666, *not* Cal. Code Regs. tit. 17, § 93116, there is no basis for Jensen's claim that § 93116 "preempts" Rules 220 and 310.

Jensen also argues that Rules 220 and 310 are preempted by Cal. Code Regs. tit. 13, § 2450 et seq. which creates California's "Portable Equipment Registration Program." These regulations "preempt districts from permitting, registering, or regulating portable engines and equipment units . . . except in the circumstances specified in the regulations." *Id.* Registration is voluntary and "[i]n the event that the owner of an engine or equipment unit elects not to register under this program, the engine or equipment unit shall be subject to district permitting requirements. . . ." *Id.* at § 2451(d). Because Jensen has not alleged that it participated in this voluntary program, the Rules are not preempted as applied to Jensen.

2.  *Due Process*

**[12]**  Jensen also raises a substantive due process challenge to the Rules. To succeed on a substantive due process claim that, like this one, does not implicate a fundamental right or suspect classification, Jensen must demonstrate that there is no rational basis for the Rules. *United States v. Alexander*, 48 F.3d 1477, 1491 (9th Cir. 1995). Here, Jensen admits that the Rules serve the "legitimate governmental interest" in "minimiz[ing] air pollution from diesel engines." Accordingly, we hold that Jensen's substantive due process claim fails.

Finally, Jensen argues that Rules 220 and 310 violate the California Constitution, Article 13A because they "levy a tax not approved by the electorate rather than a regulatory fee." Jensen did not raise this argument in its complaint, and the argument was not considered by the district court. Accordingly, we conclude that it is waived. *See Hormel v. Helvering*, 312 U.S. 552, 556 (1941).

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's grant of judgment on the pleadings in favor of the Defendants. We further hold that Jensen's appeal of the denial of his motion for a preliminary injunction is moot.

**AFFIRMED.**