**Richard J. ROSS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 79–1745.

United States District Court, District of Columbia.

June 2, 1982.

Walter H. Fletcher, Washington, D.C., for plaintiff.

Kenneth M. Raisler and Rebecca L. Ross, Asst. U.S. Attys., Washington, D.C., for defendant.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., Chief Judge.

Before the Court are Cross-Motions for Summary Judgment in the above-captioned case. Plaintiff Richard Ross, a career civil servant in the Department of Labor ("DOL" or "Department"), brings this action challenging the Department's refusal to appoint him Deputy Inspector General. For the reasons set forth below, Defendant's Motion shall be granted and Plaintiff's Motion denied.

In October 1978 the Office of Special Investigation (OSI) at the Department of Labor was transferred to the newly created Office of Inspector General (OIG), also at DOL. The transfer was effected by § 9(a)(1)(E) of the Inspector General Act of 1978, Pub.L. No. 95–452. Prior to the transfer, Plaintiff was the Deputy Director of OSI, a GS–15 position. Following the transfer, there was apparently no reduction in force and no immediate change of staffing. The former Director of OSI functioned as Acting Inspector General and Plaintiff was named Acting Deputy Inspector General. According to Plaintiff, his new position was essentially identical to the one he had held in the now-abolished OSI.

Plaintiff served as Acting Deputy Inspector General from October 1978 to June 4, 1979. During that time, he performed satisfactorily; indeed, a May 1979 performance evaluation reported that Plaintiff's performance "greatly exceeds requirements" in all pertinent areas. On May 18, 1979 Marjorie Fine Knowles was sworn in as Inspector General. Despite Plaintiff's outstanding performance rating, the new Inspector General notified him on June 4, 1979 that he would not be appointed Deputy Inspector General and instructed him to cease using the title Acting Deputy Inspector General. The next day, the position of Deputy Inspector General was designated a Senior Executive Service (SES) position.[1]

On June 8, 1979, Plaintiff's counsel wrote to Ms. Knowles requesting that she appoint Plaintiff Deputy Inspector General and allow him to elect SES status. Ms. Knowles declined, indicating that Plaintiff already had been placed in an appropriate GS–15 position; she refused to allow Plaintiff to opt into the SES on the ground that he did not hold a position that had been converted to the SES.

In fact, Plaintiff had not been "placed" in a GS–15 position at OIG. Until approximately August 1981, nearly three years after the transfer of OSI to OIG, Department records indicated that Plaintiff held the position of Deputy Director of OSI, a non-existent position in an extinct office.[2] Plaintiff held no job title corresponding to the new OIG. Moreover, although Plaintiff retained his GS–15 rating and pay, he claims he was not assigned work commensurate with his grade and experience.[3] Plaintiff also applied for, but did not receive, the position of Assistant Inspector General for Investigations. On July 16, 1979, Ronald Goldstock assumed the position of Deputy Inspector General; Goldstock has not been previously employed by the OSI.

In October 1979, Plaintiff accepted a two-year Intergovernmental Personnel Assignment (IPA) to the City of Atlanta, Georgia.

---

1. Section 413(c)(1) of the Civil Service Reform Act of 1978 entitles any employee serving in a position at the time it is designated for inclusion in the SES to opt whether to accept conversion to the SES. The SES provides covered employees with various job protections.

2. Section 9(d) of the Inspector General Act provides that when all the functions of an office are transferred, the office shall "lapse."

3. At his hearing before a Grievance Examiner, Plaintiff testified that on "many" days he "just sat in [his] office because [he] had nothing to do."

During that assignment, Plaintiff continued to draw a salary consistent with his GS–15 classification and apparently performed work of a calibre appropriate for his GS–15 status. When Plaintiff's IPA assignment expired in October 1981, he returned to DOL; he was immediately reassigned to a position in the OIG entitled "Supervisory Criminal Investigator, Director/Coordinator, Western Region, Office of Organized Crime and Racketeering." The position is a GS–15 position but is not in the SES. Plaintiff is still employed in that capacity.

In the meantime, despite his continued GS–15 status and salary [4] Plaintiff filed this action in July 1979 seeking appointment as Deputy Inspector General and an injunction precluding Mr. Goldstock from assuming that position. At the same time, he filed grievances with DOL and the Merit Systems Protection Board (MSPB). On July 11, 1979, this Court dismissed Plaintiff's case for failure to exhaust administrative remedies—referring to the pending MSPB appeal and DOL grievance procedure. Plaintiff appealed that decision and continued his claim before the MSPB. When the MSPB determined that it lacked jurisdiction over his claim, Plaintiff sought review of that determination as well. While both appeals were pending, the DOL Grievance Examiner held hearings on October 27 and 28, 1980. The examiner issued his report on March 3, 1981, recommending that Plaintiff be appointed to the position of Deputy Inspector General and be allowed to convert to SES status. The Secretary of Labor nevertheless issued a Final Decision denying Plaintiff's grievance on October 1, 1981.

On November 20, 1981, the Court of Appeals affirmed the MSPB decision that it lacked jurisdiction over Plaintiff's complaint, and since Plaintiff had by then exhausted his administrative remedies, remanded the case to this Court for further proceedings.

### I. *Plaintiff's Claim*

The gist of Plaintiff's complaint is that the Veteran's Preference Act, 5 U.S.C.

§ 3503, entitled him to be named Deputy Inspector General immediately upon the transfer of functions; and that, since the position was thereafter designated for inclusion in the SES, he is entitled both to the position and to an opportunity to opt into SES. The relevant statutes are as follows:

Section 9(c) of the Inspector General Act provides that:

> Personnel transferred pursuant to subsection (b) shall be transferred in accordance with applicable laws and regulations relating to the transfer of functions except that the classification and compensation of such personnel shall not be reduced for one year after such transfer.

Section 9(d) of the same Act provides that

> In any case where all the functions, powers, and duties of any office or agency are transferred pursuant to this subsection, such office or agency shall lapse. Any person who, on the effective date of this Act, held a position compensated in accordance with the General Schedule, and who, without a break in service, is appointed in an Office of Inspector General to a position having duties comparable to those performed immediately preceding such appointment shall continue to be compensated in the new position at not less than the rate provided for the previous position, for the duration of service in the new position.

Finally, 5 U.S.C. § 3503 provides that

> (a) When a function is transferred from one agency to another, each preference eligible employed in the function shall be transferred to the receiving agency for employment in a position for which he is qualified before the receiving agency may make an appointment from another source to that position.

> (b) When one agency is replaced by another, each preference eligible employed in the agency to be replaced shall be transferred to the replacing agency for employment in a position for which he is qualified before the replacing agency

---

**4.** Plaintiff has not only retained his GS–15 status; he has received all within-grade salary increases as they became due.

may make an appointment from another source to that position.[5]

Plaintiff asserts that these statutes entitled him, upon the transfer of functions from OSI to OIG, to be appointed to the position in OIG which most closely resembled the one he held in OSI—Deputy Inspector General. Since that position was given to an "outsider" (i.e., an individual not previously employed by OSI) Plaintiff contends that DOL conducted its staffing of the new office in violation of § 3503.

## II. *Plaintiff's Right to Bring this Action*

As an initial matter, Defendant challenges Plaintiff's right to bring this action to enforce § 3503. The statute does not specifically empower aggrieved individuals to bring an action to enforce its provisions, and it is far from clear whether such a right of enforcement should be implied. However, it is not necessary for this Court to grapple with the issue. Assuming for the purpose of these motions that Plaintiff is entitled to seek judicial redress for alleged violations of § 3503, Plaintiff is entitled to no relief. Although the Department's staffing procedures violated § 3503, Plaintiff's eventual placement in an appropriate GS–15 position, combined with his retention of all pay and benefits of GS–15 status, indicate that he has received all relief to which he is entitled.

## III. *Violation of § 3503*

Section 3503 could not be any more specific; when there is a transfer of functions, individuals who are entitled to the protection of the Act ("preference eligibles") *must* be assigned positions before others can be appointed. The purpose is patently to protect employees in the transferring agency from being "squeezed out" in the wake of a transfer of functions. In Plaintiff's case, individuals from outside the agency were awarded jobs in OIG while Plaintiff remained "in limbo"—without formal classification in OIG, allegedly without meaningful job assignments, with only an obsolete job

title in a defunct agency. The conclusion is inescapable that DOL violated the statutory duty placed upon it by § 3503. Indeed, the Secretary of Labor seems to have conceded as much. In a letter notifying Plaintiff of his Final Decision to deny the grievance, the Secretary noted that

> ... I do not condone the excessive delay in assigning you to a new GS–15 position in the Office of Inspector General.... [T]he failure to officially reassign you to a GS–15 in the Office of the Inspector General until July 26, 1981, was poor management and not in accord with my management philosophy. I apologize to you for any difficulties this may have caused you.

In fact, the "delay" in assigning Plaintiff was more than poor management; it was unlawful management. Plaintiff was entitled to a position at OIG consistent with his qualifications, and he was not given one as quickly as he should have been.

Plaintiff, however, is not satisfied with this result; he urges this Court to read § 3503 much more broadly. Under Plaintiff's interpretation, DOL was obligated to do more than (1) ensure him a position in the new department for which he was qualified; (2) with priority of assignment; (3) at the same classification and compensation for at least one year. Plaintiff insists that the Act required the Department to place him in a *particular* position, *viz.*, the position whose duties correspond most closely with those of his former position. Plaintiff concedes that the language of the statute does not mandate the result he seeks, and he is unable to cite any legislative history to bolster his interpretation. Rather, he relies upon *Feldman v. Herter,* 276 F.2d 485 (D.C. Cir.1960) and *Casman v. Dulles,* 129 F.Supp. 428, *later opinion sub nom., Casman v. Herter,* 177 F.Supp. 285 (D.D.C.1959) as establishing his right to a particular position. The Court has carefully reviewed the statute and the cases cited and concludes that

<hr>

5. At the time of the transfer, the retention rights of § 3503 applied to "each preference eligible." Effective January 12, 1979, the Civil Service Reform Act broadened the coverage of

§ 3503 beyond veterans to "each competing employee." In any case, Plaintiff is concededly a preference eligible veteran.

§ 3503 cannot sensibly be construed to accommodate the result Plaintiff seeks.

"The starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). By its terms, the statute provides only that an employee is entitled to "*a* job" for which he is qualified. It does not require, as it could have, that transferring employees be assigned to *the* position most similar to their former job. Indeed, § 9(d) of the Inspector General Act demonstrates very clearly that when Congress wished to tie the transferee's new position to his old one, it knew how to do so—and it did so explicitly.

Beyond that, it appears that Congress contemplated that some reorganization of duties, responsibilities, even employees might attend a transfer of functions. Indeed, the purpose of § 3503 was to protect certain individuals (the preference eligibles) from becoming unemployed "victims" of such reshuffling. At the same time it is reasonable to assume that Congress did not wish to eliminate altogether the new agency's ability to reorganize; requiring a new agency to place existing employees in nearly-identical positions would severely restrict the agency's organizational flexibility. So long as preference eligibles are assured jobs that entail responsibilities reflective of their qualifications, the purpose of the Veterans Preference Act is met. That is what Congress intended, and that is precisely what Plaintiff received, albeit belatedly. Plaintiff was assigned a *bona fide* GS–15 position and received full GS–15 salary and benefits, even during the time he was technically not "placed" in a GS–15 position at OIG. That being the case, the statutory purpose has been fulfilled and no further relief is required or possible.[6] The Department's Final Decision denying Plaintiff's grievance succinctly anticipated this Court's interpretation of § 3503: the applicable law does not entitle "an employee in a transfer of functions to lay claim to a specific position in the new organization."

**6.** The cases cited by Plaintiff do not compel a different result. The cases do not hold that an employee affected by a transfer of functions is entitled to the most nearly comparable position in the new organization. Indeed, *Feldman v. Herter,* 276 F.2d 485 (D.C.Cir.1960) seems to support this Court's interpretation of § 3503. *Feldman* involved a federal employee who was fired following a transfer of function. The Civil Service Commission, whose decisions in such matters were by statute mandatory upon the agency, directed his reinstatement to a "position of like status and pay." The Defendant State Department claimed it had no such position and refused to rehire Plaintiff. Pursuant to the statute, the Court ordered the Defendant to comply with the Commission's order. In the event that no position of "like status and pay" was available, the Court ordered the Department to carry out the Commission's recommendation as nearly as it could "by employing appellant," *as the statute requires,* in a position "for which [he is] qualified..." (emphasis added) Although it ordered compliance with the Commission's decision, the Court seemed to acknowledge that the requirements of § 3503 are somewhat less demanding than the Commission's decision—i.e., that the statute requires only appointment to *a* position for which the employee is qualified.