# AUTHORITY OF THE FORMER INSPECTOR GENERAL OF THE FEDERAL HOUSING FINANCE BOARD TO ACT AS INSPECTOR GENERAL FOR THE FEDERAL HOUSING FINANCE AGENCY

*The Federal Housing Finance Board Inspector General did not by statute automatically acquire authority to act as Inspector General for the Federal Housing Finance Agency at the time of the enactment of the Federal Housing Finance Regulatory Reform Act of 2008.*

*The former Federal Housing Finance Board Inspector General cannot appoint employees to the Office of Inspector General for the Federal Housing Finance Agency.*

September 8, 2009

## MEMORANDUM OPINION FOR THE GENERAL COUNSEL
## FEDERAL HOUSING FINANCE AGENCY

The Federal Housing Finance Regulatory Reform Act of 2008 ("Reform Act"), which Congress passed as Division A of the Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654, abolished the Federal Housing Finance Board ("FHFB"), an independent agency that oversaw the Federal Home Loan Banks, *see* 12 U.S.C. § 1422a (2006). The Reform Act established in place of the FHFB a new entity called the Federal Housing Finance Agency ("FHFA"). The FHFA now regulates and supervises "government sponsored enterprises" ("GSEs") supporting mortgage markets, and this responsibility extends not only to the Federal Home Loan Banks, but also to the Federal National Mortgage Association (commonly known as "Fannie Mae") and the Federal Home Loan Mortgage Corporation (commonly known as "Freddie Mac"). *See* Reform Act §§ 1002, 1101, 1102, 1311.

You have asked for our opinion on three questions about the Office of Inspector General of the FHFA: (1) whether by statute the former Inspector General for the FHFB at the time of the Reform Act's enactment automatically can act as Inspector General for the FHFA pending the appointment of an Inspector General for the FHFA; (2) whether the former Inspector General for the FHFB has authority to appoint employees to the Office of Inspector General for the FHFA; and (3) whether employees of the Office of Inspector General for the FHFA are paid at FHFA pay rates or general federal employee pay rates.

For the reasons given below, we conclude that: (1) the FHFB Inspector General at the time of the Reform Act's enactment did not by statute automatically acquire authority to act as Inspector General for the FHFA; and, accordingly, (2) the former FHFB Inspector General cannot appoint employees to the Office of Inspector General for the FHFA. In light of these conclusions, we express no view as to what pay rates apply to employees of the FHFA Office of Inspector General.

**I.**

*Creation of the FHFA*

Congress passed the Reform Act to ensure that the GSEs supporting mortgage markets—specifically, Fannie Mae, Freddie Mac, and the Federal Home Loan Banks—"operate in a safe and sound manner and fulfill the missions assigned under their charters." H.R. Rep. No. 110-142, at 87 (2007). Fannie Mae and Freddie Mac are congressionally chartered entities that promote liquidity in residential mortgage markets by purchasing residential mortgages from lenders. *See* 12 U.S.C.A. §§ 1451, 1452, 1454, 1455, 1717, 1718, 1719 (West 2001 & Supp. 2009); H.R. Rep. No. 110-142, at 95. These GSEs, though established by statute and given special privileges not available to private firms, may issue securities to investors. *See* 12 U.S.C.A. §§ 1453, 1454, 1455, 1716, 1717, 1718, 1719 (West 2001 & Supp. 2009); H.R. Rep. No. 110-142, at 95. They generally finance mortgage purchases either by issuing debt securities or by packaging mortgages into so-called "mortgage-backed securities." *See* H.R. Rep. No. 110-142, at 95. The Federal Home Loan Banks are regional entities cooperatively owned by member financial institutions. *See* 12 U.S.C.A. §§ 1423, 1424, 1426 (West 2001 & Supp. 2009); H.R. Rep. No. 110-142, at 95. Like Fannie Mae and Freddie Mac, they were established by statute to provide liquidity to residential mortgage lenders; they typically pursue this objective by providing collateralized financing to member institutions. *See* 12 U.S.C.A. §§ 1429, 1430, 1431 (West 2001 & Supp. 2009); H.R. Rep. No. 110-142, at 95.

Before the Reform Act, the Office of Federal Housing Enterprise Oversight ("OFHEO"), an office within the Department of Housing and Urban Development ("HUD") headed by a presidentially-appointed and Senate-confirmed Director, oversaw the "safety and soundness" of Fannie Mae and Freddie Mac, while the HUD Secretary supervised these GSEs in other respects, including compliance with certain affordable-housing mandates. *See* 12 U.S.C. §§ 4502(6), 4511, 4512, 4513, 4541, 4563 (2006); H.R. Rep. No. 110-142, at 95. The FHFB, an independent agency within the executive branch, oversaw the Federal Home Loan Banks. *See* 12 U.S.C. §§ 1422, 1422a, 1422b (2006).

In the Reform Act, Congress abolished OFHEO and the FHFB and assigned regulatory and supervisory responsibility for Fannie Mae (and any Fannie Mae affiliates), Freddie Mac (and any Freddie Mac affiliates), and the Federal Home Loan Banks to a new independent agency, the FHFA. *See* Reform Act §§ 1101, 1301, 1311; 12 U.S.C.A. § 4511 (West Supp. 2009). The FHFA is headed by a "Director," who receives advice "with respect to overall strategies and policies" from a "Federal Housing Finance Oversight Board" composed of the Director, the Secretary of the Treasury, the Secretary of HUD, and the Chairman of the Securities and Exchange Commission. Reform Act § 1101, 12 U.S.C.A. §§ 4512, 4513, 4513a (West Supp. 2009). The FHFA Director has substantial regulatory powers over the covered GSEs, including the authority to place regulated GSEs in receivership or conservatorship in certain circumstances. *See*, *e.g.*, Reform Act §§ 1108, 1113, 1128, 1144, 1145, 1205, 12 U.S.C.A. §§ 1430c, 4513b, 4518, 4561, 4616, 4617 (West Supp. 2009). The Director also holds authority, subject to certain transition provisions discussed below regarding FHFB, OFHEO, and HUD employees, to "appoint and fix the compensation of such officers and employees of the Agency as the Director considers necessary to carry out the functions of the Director and the Agency." 12 U.S.C.A. § 4515(a) (West Supp. 2009). These officers and employees "may be

paid without regard to the provisions of chapter 51 and subchapter III of chapter 53 of Title 5 relating to classification and General Schedule pay rates." *Id.* Although the FHFA Director "shall be appointed by the President, by and with the advice and consent of the Senate," the Reform Act provides that in the event of a vacancy in this position on the Act's effective date, "the person serving as the Director of the Office of Federal Housing Enterprise Oversight of the Department of Housing and Urban Development on that effective date shall act for all purposes as, and with the full powers of, the Director" until an initial Director is appointed. Reform Act § 1101, 12 U.S.C.A. §§ 4512(b)(1), (b)(5).

### The FHFA Inspector General

The Reform Act also provides for the appointment of an Inspector General for the FHFA. Specifically, the statute amends the Inspector General Act of 1978 ("IG Act"), 5 U.S.C.A. app. 3 (West 2007 & Supp. 2009), to include the FHFA among the federal "establishments" in which "an office of Inspector General" "is established." Reform Act § 1105(c); IG Act §§ 2, 12(2). The Reform Act also specifies that "[t]here shall be within the [FHFA] an Inspector General, who shall be appointed in accordance with section 3(a) of the Inspector General Act of 1978," Reform Act § 1105(a)(5), which provides that the Inspector General "shall be appointed by the President, by and with the advice and consent of the Senate," IG Act § 3(a). Under the Inspector General Act, the Inspectors General for "establishments" like the FHFA have broad authority to conduct investigations with respect to programs and operations of the establishment. *Id.* §§ 4, 5. To carry out their functions, Inspectors General may

> select, appoint, and employ such officers and employees as may be necessary for carrying out the functions, powers, and duties of the Office subject to the provisions of Title 5, United States Code, governing appointments in the competitive service, and the provisions of chapter 51 and subchapter III of chapter 53 of such title relating to classification and General Schedule pay rates.

*Id.* § 6(a)(7). Although each such Inspector General "shall report to and be under the general supervision of the head of the establishment" (here the FHFA Director) or, if this power is delegated, "the officer next in rank below such head," *id.* § 3(a), only the President may remove the Inspector General, *id.* § 3(b), and "[n]either the head of the establishment nor the officer next in rank below such head shall prevent or prohibit the Inspector General from initiating, carrying out, or completing any audit or investigation, or from issuing any subpena during the course of any audit or investigation," *id.* § 3(a).\*

### Transfer of OFHEO, FHFB, and HUD Personnel

Despite "abolish[ing]" OFHEO and the FHFB effective one year after the statute's enactment, the Reform Act guarantees that each employee of these agencies "shall be transferred to the [FHFA] for employment" in "a position with the same status, tenure, grade, and pay as that held on the day immediately preceding the transfer." Reform Act §§ 1301, 1303, 1311, 1313.

---

\* The Inspector General Act also includes special provisions, not relevant here, governing the powers and duties of Inspectors General at particular agencies. *See, e.g.*, IG Act §§ 8-8K.

Permanent employees transferred under this provision "may not be involuntarily separated or reduced in grade or compensation during the 12-month period beginning on the date of transfer, except for cause." *Id.* §§ 1303(b)(2), 1313(b)(2). Similarly, a temporary employee may be separated only "in accordance with the terms of the appointment of the employee." *Id.*

The Reform Act likewise provides that certain HUD employees—those "whose position responsibilities primarily involve the establishment and enforcement of the housing goals under subpart B of part 2 of subtitle A of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992 (12 U.S.C. 4561 et seq.)"—"shall be transferred to the [FHFA] for employment." *See* Reform Act § 1133(a). The Act gives these employees equivalent protections against involuntary separation or reduction in grade or compensation as are applied to transferred OFHEO and FHFB personnel. *See id.* § 1133.

## II.

You have taken the view that because the position of FHFA Inspector General is a new office requiring presidential nomination and Senate confirmation under the Reform Act, this office must remain vacant until an Inspector General for the FHFA is properly appointed. Under your view, because the President has not designated the former FHFB Inspector General to act as Inspector General for the FHFA, the former Inspector General may not exercise the powers and duties of the FHFA Inspector General. The former FHFB Inspector General argues, in contrast, that he automatically assumed these powers and duties by operation of the Reform Act. We do not understand the former FHFB Inspector General to assert that the Reform Act made him the Inspector General for the FHFA. But he does assert that, by virtue of the Reform Act's transition provisions, he may exercise the powers of the FHFA Inspector General "in trust until the President of the United States appoints a new Inspector General." Memorandum for Edward DeMarco, Deputy Director, FHFA, from Edward Kelley, *Re: Inspector General Authority*, at 2 (July 7, 2009). In defense of this view, he contends that "the Congress clearly intended the continuation of the Office of Inspector General within the [FHFA]" and that "[t]he senior official of the FHFA Office of Inspector General has the duty and responsibility to conduct the affairs of the Office of Inspector General as envisioned by Congress." *Id*. at 3. The former FHFB Inspector General thus asserts that, in the capacity of acting head of the FHFA Office of Inspector General, he may hire personnel for that office and that he may employ such personnel at FHFA-specific pay rates, without regard to the General Schedule applicable to most federal employees.

In our judgment, the applicable statutes do not enable the former FHFB Inspector General to exercise the authority he claims. By its terms, the Reform Act nowhere expressly empowers the former FHFB Inspector General—or, for that matter, any other specific official—to perform the functions and duties of the FHFA Inspector General before an appointment of an FHFA Inspector General by the President. The Reform Act, rather, incorporates the relevant provisions of the Inspector General Act of 1978 and so provides for the appointment of the FHFA Inspector General by the President with the advice and consent of the Senate. *See* Reform Act § 1105(a)(5); IG Act § 3(a). By contrast, the Inspector General of the FHFB was appointed by the agency head. *See* 5 U.S.C.A. app. 3 § 8G (West 2007).

A general provision in the Reform Act does guarantee that each former FHFB employee "shall be transferred to the [FHFA] for employment" in "a position with the same status, tenure, grade, and pay as that held on the day immediately preceding the transfer." Reform Act §§ 1313(a), (b)(1). We do not believe, however, that this section supports the former FHFB Inspector General's argument. As this Office has indicated in a prior opinion, transitional protections like these provisions of the Reform Act may be suitable where, as here, an agency is empowered to hire employees without regard to usual civil service protections. *See Applicability of the Civil Service Provisions of Title 5 of the United States Code to the United States Enrichment Corporation*, 17 Op. O.L.C. 27, 29 (1993). We thus concluded in our prior opinion that a provision guaranteeing the same "compensation, benefits, and other terms and conditions of employment in effect immediately prior to" an employee's transfer to the new agency "reflect[ed] Congress's assumption that [the agency in question] would be free to set the terms and conditions of employment for its employees [without regard to civil service laws], because if [the agency] were bound by civil service statutes Congress would not have needed to guarantee transferred employees their existing employment terms and conditions." *Id.* By the same token, we understand the Reform Act's guarantee of identical "status, tenure, grade, and pay" to ensure that, despite the FHFA Director's authority to "appoint and fix the compensation of" FHFA officers and employees without regard to generally applicable federal pay rates, *see* 12 U.S.C.A. § 4515(a), employees transferred from the FHFB to the FHFA arrive with the same overall terms and conditions of employment that they enjoyed previously. The companion provision barring involuntary separation or reduction in "grade or compensation" without cause then ensures that—again despite the FHFA Director's appointment authority and general exemption from usual federal pay scales—the Director may not reassign such employees or reclassify their positions in a manner that results in a reduction in grade or pay during their first year at the FHFA. *See* Reform Act § 1313(b)(2). Consistent with this interpretation, the House Financial Services Committee's report on an earlier version of this legislation referred to comparable language as ensuring that former FHFB employees "will be guaranteed a position with the [FHFA] and will retain their benefits for one year following the transfer." H.R. Rep. No. 110-142, at 147.

Accordingly, even assuming the terms "status" and "tenure" might otherwise be given a broader construction, we do not understand these terms in this context to guarantee any specific title, duties, or responsibilities to transferred employees. *See*, *e.g.*, *Dolan v. United States Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."). To the contrary, as you have suggested (and as the FHFB Inspector General does not dispute), we understand the terms "status, tenure, grade, and pay" to refer to the transferred employee's prior competitive or excepted-service status, *cf.* 5 C.F.R. § 212.301 (2009) (defining "competitive status"), permanent or temporary tenure, pay grade, and compensation. This interpretation gives the four conjoined terms—"status, tenure, grade, and pay"—a consistent overall meaning: all refer to general terms and conditions of employment relating to compensation, seniority, and job security. *See*, *e.g.*, *Dole v. Steelworkers*, 494 U.S. 26, 36 (1990) ("words grouped in a list should be given related meaning" (internal quotation marks omitted)). In addition, while construing "status" and "tenure" to encompass job duties and responsibilities might severely constrain the FHFA Director's authority over the organization of the Agency, our interpretation preserves the Director's broad authority, expressly provided by Congress, to determine functions within the FHFA by

"delegat[ing] to officers and employees of the Agency any of the functions, powers, or duties of the Director." Reform Act § 1102(a), 12 U.S.C.A. § 4513(b); *see also* Reform Act § 1101, 12 U.S.C.A. §§ 4512(c), (d), (e) (establishing Deputy FHFA Directors for "enterprise regulation," "federal home loan bank regulation," and "housing mission and goals," but providing that, within these broad subject-matter domains, the Deputy Directors "shall have such functions, powers, and duties . . . as the Director shall prescribe"). Finally, our interpretation harmonizes the meaning of the FHFB transition provision with a related statute, 5 U.S.C. § 3503, referenced in the transition provision itself. Reform Act section 1313(a) states that a transfer of employees under this provision "shall be deemed a transfer of function for purposes of" this statute, which provides that "[w]hen a function is transferred from one agency to another, each competing employee in the function shall be transferred to the receiving agency for employment in a position for which he is qualified before the receiving agency may make an appointment from another source to that position," 5 U.S.C. § 3503(a) (2006). In accordance with our construction of section 1313 here, the language of section 3503 has been construed to require only that "an employee is entitled to '*a* job' for which he is qualified," not "*the* position most similar to [the employee's] former job." *Ross v. United States*, 566 F. Supp. 1024, 1027-28 & n.5 (D.D.C. 1982).

In contrast with the general transition provisions of section 1313, which do not expressly purport to assign duties, the Reform Act contains one provision about transition that does expressly assign duties. Section 1101 of the Reform Act provides that the former OFHEO Director may act as FHFA Director in the event of an initial vacancy in that post. *See* Reform Act § 1101, 12 U.S.C.A. § 4512(b)(5). That discrete transition provision would have been superfluous if section 1133(b)(1) by itself constituted a general assignment of identical duties to all former FHFB employees and thus to the FHFB Inspector General. That provision also shows that Congress recognized the possibility of initial vacancies in positions at the FHFA, yet made no provision for an interim acting Inspector General. "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)); *see also, e.g.*, *General Motors Corp. v. United States*, 496 U.S. 530, 538 (1990) (reading statute not to impose a specific deadline on a certain regulatory action because "the statutory language does not expressly impose a . . . deadline and Congress expressly included other deadlines in the statute"); *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (holding that "[t]he most natural reading" of a statute is "that Congress implicitly excluded a general . . . rule by explicitly including a more limited one").

The absence of an express provision providing for such an assignment of duties is also significant in light of the Federal Vacancies Reform Act of 1998 ("Vacancies Reform Act"), Pub. L. No. 105-277, Div. C, Tit. I, § 151, 112 Stat. 2681-611, 2681-613 (as amended). The Vacancies Reform Act provides that, absent a recess appointment or an "express[]" statutory provision to the contrary, it is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate." 5 U.S.C. § 3347(a) (2006). Yet the Vacancies Reform Act provides only that "[i]f an officer of an Executive agency . . . whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable

to perform the functions and duties of the office," either the "first assistant to the office" or another officer designated by "the President (and only the President)" may, within certain time limits, "perform the functions and duties of the office temporarily in an acting capacity." *See* 5 U.S.C. §§ 3345, 3346 (2006). We have doubts that the Vacancies Reform Act authorizes interim assignments to fill initial vacancies. If, as in this case, no one has previously been appointed to an office, there is no officer who has "die[d]" or "resign[ed]" or "is otherwise unable to perform the functions and duties of office," and there thus is no vacancy that the Vacancies Reform Act allows to be filled. *Cf. Olympic Fed. Sav. & Loan Ass'n v. Office of Thrift Supervision*, 732 F. Supp. 1183, 1195 (D.D.C.) (construing term "required by law to be appointed" in prior vacancies statute to permit temporary filling of vacancies only where the officer vacating the position was properly appointed and had thus "take[n] office"), *appeal dismissed as moot*, 903 F.2d 837 (D.C. Cir. 1990). But even assuming that the Vacancies Reform Act would permit *someone* to be named acting FHFA Inspector General in this case, the former FHFB Inspector General's own submission shows that he is neither a properly appointed first assistant nor an officer designated by the President to act as FHFA Inspector General.

To be sure, the Inspector General Act, as amended by the Reform Act, provides that "there is established" within the FHFA "an office of Inspector General." IG Act § 2. But even assuming that this entity has inherent functions that its personnel may perform even without a properly appointed or designated Inspector General or acting Inspector General at the head of the office, neither the Reform Act nor the Inspector General Act supports the former FHFB Inspector General's view that the FHFA Office of Inspector General was automatically populated with former personnel of the FHFB Office of Inspector General by operation of the Reform Act's transition provisions. To the contrary, in the Reform Act, Congress "abolished" the FHFB, including its Office of Inspector General, and established a new agency, the FHFA, with its own Inspector General. *See* Reform Act §§ 1101, 1301, 1311. And while Congress provided for the transfer of FHFB personnel to the FHFA, the statute, as noted, does not guarantee these employees any particular substantive responsibilities. *See id.* § 1313; *cf. Ross*, 566 F. Supp. at 1028. Accordingly, although the FHFA Office of Inspector General might well be the natural place for transferred former employees of the FHFB Inspector General, the statute does not provide for the automatic transformation of the abolished FHFB Office of Inspector General into a new FHFA Office of Inspector General.

Finally, our conclusion that the Reform Act should not be construed to have authorized the former FHFB Inspector General to act as FHFA Inspector General draws support from the fact that the offices of FHFB Inspector General and FHFA Inspector General do not have essentially equivalent jurisdiction. The Supreme Court has held that Congress may assign new duties to an officer without creating a new office, provided the new duties are "germane to the office[] already held by" the incumbent, *Shoemaker v. United States*, 147 U.S. 282, 301 (1893); *see also Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. 124, 157-59 (1996), but this Office has indicated that the Constitution may require a new appointment when the addition of new duties—even duties "germane" to an existing office—is "considerable." Memorandum for David G. Leitch, Deputy Counsel to the President, from C. Kevin Marshall, Acting Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Status of the Director of Central Intelligence Under the National Security Intelligence Reform Act of 2004* at 8 n.2 (Jan. 12, 2005); *see also Constitutional Separation of Powers*, 20 Op. O.L.C. at 158 (indicating that whether Congress has created a new office depends on "the reasonableness

of assigning the new duties 'in terms of efficiency and institutional continuity'" and on "whether 'it could be said that [the officers'] functions . . . [with the additional duties] were within the contemplation of those who were in the first place responsible for their appointment and confirmation'" (quoting *Legislation Authorizing the Transfer of Federal Judges from One District to Another*, 4B Op. O.L.C. 538, 541 (1980))); *Olympic Fed. Sav. & Loan*, 732 F. Supp. at 1193. Without deciding the constitutional issue here, we note that the FHFA Inspector General holds materially broader statutory responsibility than did the FHFB Inspector General. While the FHFB oversaw only the Federal Home Loan Banks, the FHFA also regulates Fannie Mae and Freddie Mac—two major financial institutions, *see* H.R. Rep. No. 110-142, at 96. As the Reform Act itself indicates, oversight of Fannie Mae and Freddie Mac may raise different regulatory concerns from oversight of the Federal Home Loan Banks; the Reform Act thus requires the FHFA Director to "consider the differences between the Federal Home Loan Banks and [these] enterprises" before issuing any regulations or general guidance affecting the Federal Home Loan Banks. *See* Reform Act § 1201, 12 U.S.C.A. § 4513(f). Furthermore, the FHFA appears to hold broader powers than OFHEO or the FHFB expressly had, including the power to place GSEs in receivership in certain circumstances. *See* Reform Act § 1145, 12 U.S.C.A. § 4617; H.R. Rep. No. 110-142, at 90.

Consequently, the FHFA Inspector General conducts investigations with respect to an agency with substantially broader functions, powers, and responsibilities than did the FHFB Inspector General. Perhaps not surprisingly, while the statute establishing the FHFB provided that its Inspector General was to be appointed by the agency head, *see* 5 U.S.C.A. app. 3 § 8G (West 2007), the Reform Act provides for appointment of FHFA's Inspector General by the President with the advice and consent of the Senate. That distinction between the offices is thus also in keeping with our conclusion that the Reform Act cannot be read to have automatically, by implication, given the former FHFB Inspector General authority to act as Inspector General for the FHFA.

### III.

In sum, neither the Reform Act nor the Vacancies Reform Act authorizes the former FHFB Inspector General to assume the functions and duties of the FHFA Inspector General pending appointment of a new nominee. The answer to your second question—whether the former FHFB Inspector General has authority to appoint staff to the FHFA Office of Inspector General—follows logically from this answer. The Inspector General Act authorizes only the Inspector General to "select, appoint, and employ such officers and employees as may be necessary for carrying out the functions, powers, and duties of the Office." IG Act § 6(a)(7). Thus, because the former FHFB Inspector General lacks authority to act as FHFA Inspector General, he cannot hire staff for the FHFA Inspector General's office. And because we conclude that the former FHFB Inspector General cannot hire staff in the FHFA Office of Inspector General, we need not determine at this time what pay rates would apply to any employees who are hired in the future. We therefore do not address your third question.

Insofar as the absence of an Inspector General creates practical difficulties for the FHFA, we note that the Reform Act authorizes the FHFA Director to "delegate to officers and employees of the [FHFA] any of the functions, powers, or duties of the Director, as the Director considers appropriate." Reform Act § 1102(a), 12 U.S.C.A. § 4513(b). As you have suggested,

this authority might permit the Director to give designated employees certain responsibilities for auditing and monitoring the FHFA's activities.


/s/

DANIEL L. KOFFSKY
Deputy Assistant Attorney General