**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COMMITTEE FOR A BETTER ARVIN, a
California nonprofit corporation;
COMITE RESIDENTES ORGANIZADOS
AL SERVICIO DEL AMBIENTE SANO,
an unincorporated association;
ASSOCIATION OF IRRITATED
RESIDENTS, an unincorporated
association,
                          *Petitioners*,

                  v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY; LISA P. JACKSON,
Administrator, U.S. Environmental
Protection Agency; JARED
BLUMENFELD, Regional
Administrator, Region IX, U.S.
Environmental Protection Agency,
                          *Respondents*,

SAN JOAQUIN VALLEY UNIFIED AIR
POLLUTION CONTROL DISTRICT,
                  *Respondent-Intervenor*.

No. 11-73924

COMMITTEE FOR A BETTER ARVIN, a
California nonprofit corporation;
COMITE RESIDENTES ORGANIZADOS
AL SERVICIO DEL AMBIENTE SANO,
an unincorporated association;
ASSOCIATION OF IRRITATED
RESIDENTS, an unincorporated
association,

*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY; GINA MCCARTHY,
Administrator, U.S. Environmental
Protection Agency; JARED
BLUMENFELD, Regional
Administrator, Region IX, U.S.
Environmental Protection Agency,

*Respondents*,

SAN JOAQUIN VALLEY UNIFIED AIR
POLLUTION CONTROL DISTRICT,

*Respondent-Intervenor*.

No. 12-71332

OPINION

On Petition for Review of an Order of the
United States Environmental Protection Agency

Argued and Submitted
October 22, 2014—Pasadena, California

Filed May 20, 2015

Before: Sidney R. Thomas, Chief Judge, and Alex Kozinski
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

## SUMMARY[*]

### Environmental Law

The panel granted in part, and denied in part, a petition for review brought by several environmental and community organizations challenging the Environmental Protection Agency's approval of California's State Implementation Plans to comply with National Ambient Air Quality Standards enacted under the federal Clean Air Act, concerning ozone and fine particulate matter in the San Joaquin Valley.

The panel held that the EPA violated the Clean Air Act by approving California's plans even though the plans did not include the state-adopted mobile emissions standards on which those plans relied to achieve their emission reduction goals. The panel further held that the EPA did not violate the Clean Air Act by not requiring inclusion of other state mechanisms in its plans. The panel also held that other control measures approved by the EPA were enforceable commitments as the Clean Air Act required. The panel remanded to the EPA for further proceedings.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Brent Newell (argued), Sofia L. Parino, Center on Race, Poverty & the Environment, San Francisco, California; Laura Baker, Center on Race, Poverty & the Environment, Delano, California, for Petitioners.

Heather E. Gange (argued), Ignacia S. Moreno, Dustin J. Maghamfar, United States Department of Justice, Washington, D.C.; Jeanhee Hong, Jefferson Wehling, United States Environmental Protection Agency, San Francisco, California; Jan Tierney, Geoffrey L. Wilcox, United States Environmental Protection Agency, Washington, D.C., for Respondents.

Annette A. Ballatore-Williamson (argued), Catherine T. Redmond, San Joaquin Valley Unified Air Pollution Control District, Fresno, California, for Respondent-Intervenor.

**OPINION**

GOULD, Circuit Judge:

Petitioners, a contingent of environmental and community groups, bring serious challenges to the State of California's plans to improve air quality in the San Joaquin Valley, an area with some of the worst air quality in the United States. We must consider whether these state plans are sufficient in law, specifically, whether the regulating United States Environmental Protection Agency ("EPA") erred in approving California's State Implementation Plans ("SIPs") to comply with National Ambient Air Quality Standards ("NAAQS") enacted under the federal Clean Air Act

("CAA") concerning ozone and fine particulate matter in the San Joaquin Valley. We do this in the context of a cooperative federalism regime in which the federal agency sets required air quality standards but the state is a primary actor in creating plans to achieve them, followed by potential enforcement at both state and federal levels and by private citizens.

Petitioners contend: (1) that the approved plans calculate the necessary emissions reductions and forecasts in part based on state-adopted measures that are not themselves incorporated into the federally enforceable plan, in violation of the CAA; (2) that other strategies to gain compliance with the NAAQS proposed by the California Air Resources Board ("CARB") and Intervenor San Joaquin Valley Unified Air Pollution Control District ("the District") that *are* in the EPA-approved plans are unenforceable goals, rather than the enforceable commitments that the CAA requires; (3) that EPA unlawfully approved the plan relating to ozone insofar as that plan lacked enforceable transportation control measures; and (4) that the D.C. Circuit's holding in *NRDC v. EPA*, 706 F.3d 428 (D.C. Cir. 2013), that EPA relied on the wrong statutory provision of the CAA in crafting its fine particulate matter implementation rule, pursuant to which the fine particulate matter plan at issue was approved, gives another important reason to grant the petition.

We hold that by approving California's plans even though the plans did not include the state-adopted mobile emissions standards on which those plans rely to achieve their emissions reductions goals, EPA violated the CAA. We also hold that EPA did not violate the CAA by not requiring inclusion of other state mechanisms in its plans, and that other control

measures approved by EPA are enforceable commitments as the CAA requires.[1]

# I

States and the federal government must work together to improve air quality for individuals nationwide. This is so because the CAA has established a uniquely important system of cooperative federalism in the quest for clean air. "The CAA makes the States and the Federal Government partners in the struggle against air pollution." *Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 938 (9th Cir. 2011) (quoting *Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990) (internal quotation marks omitted)). The CAA protects the nation's air quality by authorizing EPA to establish NAAQS that apply to air pollutants. 42 U.S.C. § 7409.[2] EPA designates areas that fail to attain the NAAQS as "nonattainment areas." *Id.* § 7407(d)(1).

# A

The CAA requires states to address nonattainment areas by developing a SIP that lays out a plan for how a nonattainment area will eventually comply with the NAAQS. 42 U.S.C. §§ 7407(a), 7410. After public notice and hearings, a state must adopt the SIP and submit it to EPA for

---

[1] Because EPA must reconsider the two plans and only approve them with the necessary measures included, we need not reach Petitioners' other arguments, which Petitioners are free to raise again after EPA's reconsideration and subsequent final action.

[2] All citations to the United States Code refer to the 2012 edition.

review and approval. *Id.* § 7410(a). EPA must then act on the SIP, approving or disapproving it in part or in whole. 42 U.S.C. § 7410(k)(3). Once approved by EPA, a "SIP bec[o]me[s] federal law . . . , and c[annot] be changed unless and until EPA approve[s] any change." *Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1097 (9th Cir. 2007) (emphasis omitted). The CAA provides a private right of action for citizens to enforce a SIP by bringing a civil action in federal district court. 42 U.S.C. § 7604.

## B

The CAA also regulates mobile source emissions, such as those from cars and trucks. Congress has generally preempted states from setting mobile source emissions standards. *Jensen*, 644 F.3d at 938 (citing 42 U.S.C. § 7543(a)). California, however, may set its own mobile source emissions standards, with EPA approval. *Id.* at 938 n.3 (citing 42 U.S.C. § 7543(b) (motor vehicles); § 7543(e)(2) (nonroad sources)). California thus relies on its own mobile source standards in the development of its SIPs.

## C

The present challenge relates to EPA's approval of revisions to California's 2007 SIP, and specifically to plans for achieving compliance with national standards for two pollutants: fine particulate matter ("$PM_{2.5}$") and ozone.

In 1997, EPA promulgated 24-hour and annual standards for $PM_{2.5}$. The relevant parts of California's plan to meet these requirements are: (1) the District's 2008 $PM_{2.5}$ Plan, revised in 2010 and 2011; and (2) provisions of CARB's 2007 State Strategy, as revised in 2009 and 2011, that relate

to the San Joaquin Valley (collectively, "the $PM_{2.5}$ Plan"). The $PM_{2.5}$ Plan was proposed for inclusion in California's SIP. On November 9, 2011, EPA approved in part and disapproved in part the $PM_{2.5}$ Plan in a final rulemaking, and the timely petition for review in case number 11-73924 followed.

As to ozone, EPA promulgated the 8-hour ozone standard to replace the 1-hour standard in 1997, and adopted a more stringent 8-hour ozone standard in 2008. The 8-hour standard refers to the average concentration of ground-level ozone, which can contribute to lung disease, as measured over an 8-hour period in a given area. The key parts of California's plan to meet the 8-hour ozone standard are: (1) the District's 2007 Ozone Plan, as revised in 2008 and 2011; and (2) the provisions of CARB's State Strategy, as revised in 2009 and 2011, that pertain to the San Joaquin Valley (collectively, "the 8-Hour Plan"). EPA approved the 8-Hour Plan on March 1, 2012, and the timely petition for review in case number 12-71332 followed.

We refer collectively to the $PM_{2.5}$ and 8-Hour Plans as "the Plans." Because the two petitions are closely related and involve the same parties, we address the petitions together.

## II

We have jurisdiction to review EPA's action pursuant to 42 U.S.C. § 7607(b)(1). We review approval of a SIP by considering whether the EPA's decision was arbitrary, capricious, an abuse of discretion, or contrary to law. *Sierra Club v. EPA*, 671 F.3d 955, 961 (9th Cir. 2012) (noting that when assessing CAA challenges, we apply the general standard of review for agency decisions set forth in the

Administrative Procedure Act, 5 U.S.C. §§ 701–06). "With respect to the CAA, Congress has given EPA general rulemaking authority, 42 U.S.C. § 7601(a)(1), which, when exercised, requires our deference in accordance with *Chevron*." *Id.* at 962.

> *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)[,] generally sets forth the framework by which we review an agency's interpretation of a statute. *Id.* at 842–44. Under this framework at the first step we determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

*Sierra Club*, 671 F.3d at 961–62. EPA's interpretation of its own regulations is given considerable deference and "must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (internal quotation marks omitted); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997).

## III

## A

Because the language and structure of the CAA demand that all control measures on which the Plans rely to attain the NAAQS be included in the SIP and subject to enforcement by individuals and by EPA, we grant the petition for review in part.

As explained above, the CAA makes "the regulation of mobile source emissions . . . a federal responsibility, [and] Congress has expressly preempted states from setting emissions standards for mobile sources." *Jensen*, 644 F.3d at 938 (citing 42 U.S.C. § 7543). "The notable exception to this general rule is that California is permitted to set its own mobile emissions standards so long as it obtains EPA approval." *Id.* at 938 n.3 (citing 42 U.S.C. § 7543). Once approved, these state-adopted measures ("waiver measures"), which are more stringent than federal alternatives, allow the state to avoid the preemptive federal emissions standards. 42 U.S.C. § 7543(b).

A SIP must "include enforceable emission limitations and other control measures . . . as may be necessary or appropriate to meet the applicable requirements of this chapter." *Id.* § 7410(a)(2)(A). The CAA provides a private right of action for citizens to enforce a SIP's provisions through a civil action in federal court, 42 U.S.C. § 7604, but only those provisions actually included in the SIP are subject to such enforcement, *see El Comite Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1069–70 (9th Cir. 2008).

Here, the Plans' control strategies are based in significant part on reductions that will be achieved through waiver measures, which allow consideration of the stricter state standards rather than federal standards. Thus, although EPA approved the waiver measures such that they are not subject to federal preemption, 42 U.S.C. § 7543, EPA approved the Plans at issue here without including those waiver measures on which the State's strategy to comply with the NAAQS for $PM_{2.5}$ and 8-hour ozone partially relied. Petitioners argue that in so doing, EPA violated the plain terms of the CAA. We agree.

EPA acknowledges that the Plans rely in part on waiver measures but argues that because of EPA's longstanding policy of not requiring waiver measures to be specifically included in California SIPs and because of Congress's alleged ratification of that practice under the so-called "savings clause" in the CAA, *see* 42 U.S.C. § 7515, the CAA does not require waiver measures, which have already been subject to an EPA approval process, to undergo an additional approval process by being included in a SIP.

But, to the contrary, the plain language of § 7410(a) refutes EPA's position. The statute makes clear that SIPs "*shall* include" all emissions limitations, control measures, means, and techniques on which the state relies to assure compliance with the CAA. 42 U.S.C. § 7410(a)(2)(A) (emphasis added). The language associated with "include" is mandatory. Moreover, the phrase "necessary or appropriate to meet the applicable requirements of this chapter" refers to the CAA as a whole (a *chapter* of Title 42 of the U.S. Code, rather than the *section* relating to SIPs). 42 U.S.C. § 7410(a). There is no viable justification for reading this section to simply permit, rather than affirmatively mandate, a SIP to

include all measures required to achieve compliance with the NAAQS. Instead, common sense tells us that a SIP must include waiver measures to the extent that they are needed to achieve a state's compliance with the federally required air quality standards.

As for EPA's ratification argument, the CAA's savings clause states in relevant part:

> Each regulation, standard, rule, notice, order and guidance promulgated or issued by the Administrator under this chapter, as in effect before November 15, 1990, shall remain in effect according to its terms, *except to the extent* otherwise provided under this chapter, *inconsistent with any provision of this chapter*, or revised by the Administrator.

*Id.* § 7515 (emphasis added). The plain language of this section says that only official policies set forth in a pre-1990 regulation, standard, rule, notice, order, and guidance, *and* that are not inconsistent with the CAA remain in effect. But, as noted, the EPA's interpretation that waiver measures need not be included in SIPs *does* contradict the plain language of § 7410(a). Because the meaning of the statutory language is clear, it is unnecessary to consider whether EPA's interpretation is reasonable. *See Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842–43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

This plain language reading is further supported by the most basic of principles. If the state standards that are

necessary for meeting federal requirements are not a part of the SIP, then, while the state agency, CARB, perhaps could enforce them, the responsible federal agency, EPA, would not be able to bring an action directly challenging violation of those state standards. It is the primary responsibility of EPA to ensure that Congress's aims to ensure healthy air quality have been carried out, and it is fundamentally error if any of the standards necessary for federal compliance are not within the SIP so as to be enforceable directly by the responsible federal agency. The federal agency, EPA, not the state agency, CARB, has the fundamental duty to carry the ball across the goal line to achieve compliant air quality levels or satisfactory progress toward that end.

EPA's interpretation of the savings clause as ratifying its practice of approving California's SIPs without subjecting the waiver measures to review when the SIP is approved is also inconsistent with citizens' private right of action to enforce SIP provisions. *See* 42 U.S.C. § 7604. Citizens cannot enforce provisions that are not a part of the SIP. EPA in its briefing concedes that its interpretation would prevent both citizens and EPA itself from enforcing the California's waiver measures under the CAA in the context of a SIP "because they are not in the SIP." EPA argues, however, that citizens have recourse under the CAA to enforce federal standards, and that CARB itself can enforce the waiver measures. But this frustrates congressional intent as expressed in the CAA's provision of a private right of action through which *citizens* may enforce SIPs and their constituent parts, and not merely enforce federal baseline standards for emissions generally. Also, as Petitioners point out, the federal standards are less stringent than California's standards. This means that the SIP provisions themselves, which depend on the *more* stringent waiver measures, can be only incompletely enforced by

citizens in federal court, insofar as emission reductions in the Plans depend on reductions created by the gap between federal measures and the waiver measures.

Having any state law standards that are necessary for compliance with the federal law requirements incorporated as part of the SIP, so as to be directly enforceable by EPA and by citizens, is a more safe and sensible system of enforcement than that urged by EPA. We conclude that the enforcement gap for private citizens and EPA in the present SIP is inconsistent with the CAA's requirements and the express aims of Congress. Because the plain language of the CAA does not support EPA's interpretation that waiver measures need not be included in SIPs that depend on them, we conclude that EPA violated the CAA by approving the Plans without the inclusion of the waiver measures on which they relied.

**B**

Petitioners also contend that EPA erred when it did not require the Plans to include so-called "non-waiver measures." These are other state enforcement measures that are not a part of the SIP but that Petitioners claim are also needed to meet attainment standards. For the reasons explained below, we reject this challenge.

Specifically, Petitioners challenge EPA's failure to require the SIP to include three non-waiver measures: (1) the Heavy Duty Diesel Engine-Chip Reflash measure; (2) the Diesel Particulate Matter Control Measure for On-Road Heavy-Duty Diesel-Fueled Vehicles Owned or Operated by Public Agencies and Utilities ("Diesel Particulate Matter Rule"); and (3) the Solid Waste Collection Vehicle Rule.

Regarding the Heavy Duty Diesel Engine-Chip Reflash measure, EPA explains that because that rule was partially invalidated by the California Supreme Court and repealed four years before EPA approved the $PM_{2.5}$ Plan, that rule could not have been included in the $PM_{2.5}$ Plan. *See* Approval of 2008 San Joaquin Valley $PM_{2.5}$ Plan and 2007 State Strategy, 76 Fed. Reg. 69,896, 69,908 (Nov. 9, 2011) (to be codified at 40 C.F.R. pt. 52) (noting that any emissions reduction credit related to diesel engine chip reflashes were from those vehicles whose engine chips were "reflashed" before the rule was invalidated and adding that attempts to invalidate those "reflashes" could be prosecuted under CAA anti-tampering provisions). EPA did not give emission reduction credit based on the chip reflash rule itself, but instead based on actions taken under the rule before the California Supreme Court invalidated it. Petitioners' argument related to this non-waiver measure fails.

Regarding the Diesel Particulate Matter Rule and the Solid Waste Collection Vehicle Rule, EPA did not approve those mobile source measures into the Plans because their overall emission reduction effects were *de minimis* and did not affect EPA's overall evaluations of California's ability to meet the relevant air quality standards by the statutory deadline. *See id.*

We have applied in statutory interpretation the ancient principle that the law does not care about trifles. *See, e.g.*, *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839–40 (9th Cir. 2007).[3] We conclude that the CAA allows

---

[3] In *Skaff* we pointed to both the substance of the Latin maxims *de minimis non curat lex* and *lex non curat de minimis*, and also cases in which those principles had been applied by English and American courts,

EPA to ignore trifling emission control measures when EPA evaluates SIPs. Here, EPA has urged that these state law measures were not included in the SIP because they had no measurable impact on California's ability to meet required air quality levels. We cannot say on the record before us that EPA's conclusion that these standards have *de minimis* impact on the relevant issue is arbitrary and capricious, or contrary to law. *See* 5 U.S.C. § 706(2)(A). Further, the CAA requires SIPs to include any of a variety of enforceable emission control measures "as may be necessary or appropriate" to meet the CAA's general requirements. 42 U.S.C. § 7410(a)(2). This language implies that some emission control measures may not be necessary or appropriate to meet the CAA's requirements—although, as we held above, those measures upon which compliance plans rely must be included. EPA expressly stated that when it approved the Plans, it determined that the Diesel Particulate Matter Rule and the Solid Waste Collection Vehicle Rule produced only *de minimis* emission reductions and so did not affect EPA's overall attainment and reasonable further progress evaluations. Approval of 2008 San Joaquin Valley PM$_{2.5}$ Plan and 2007 State Strategy, 76 Fed. Reg. 69,896 69,908 (Nov. 9, 2011) (to be codified at 40 C.F.R. pt. 52). Those two rules, then, were not necessary or appropriate to meet the CAA's requirements according to EPA, and EPA did not err in approving the Plans without incorporating these emission control measures. We conclude that EPA's decision not to approve the three specific non-waiver measures into the Plans was not arbitrary or capricious and did not violate the CAA.

including the United States Supreme Court. 506 F.3d at 839–40.

**IV**

The control strategies for both Plans in part rely on state commitments to propose and adopt emission control measures and to achieve aggregate emission reductions sufficient to comply with the NAAQS. The CAA does not specifically address commitments by states to propose or adopt emission control measures or to achieve additional emissions reductions. *See BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 839–40 (5th Cir. 2003). But the CAA does allow a variety of "other control measures, means, or techniques . . . as well as schedules and timetables for compliance" to comprise an enforceable control strategy. *Id.* at 839; *see also* 42 U.S.C. § 7410(a)(2)(A). Where EPA has previously relied on such commitments, courts have upheld their inclusion in SIPs. *See BCCA*, 355 F.3d at 838 n.25 (collecting cases); *Envtl. Def. v. EPA*, 369 F.3d 193, 209 (2d Cir. 2004).

Petitioners do not challenge the validity of enforceable commitments generally. Instead, they argue that California's commitments to propose and adopt emission control measures and to achieve aggregate emission reductions are merely aspirational goals and are unenforceable, because they contain no specific strategies or measures, and they impermissibly allow specific measures to fail to meet their individual emission reduction targets so long as the aggregate emission reduction commitment is met. Alternatively, Petitioners argue that even if the commitments are not merely aspirational goals, they are still unenforceable because: (1) California has discretion whether to change or honor them; and (2) it is practically impossible to bring a timely enforcement action if commitments remain unfulfilled by their deadlines. We reject these arguments and conclude that

California's commitments are enforceable. EPA's approval of the commitments to propose and adopt emission control measures and to achieve aggregate emission reductions was not arbitrary or capricious and did not violate the CAA.

## A

Petitioners analogize California's commitments to achieve aggregate emission reductions to the public transit ridership target in *Bayview Hunters Point Community Advocates v. Metropolitan Transportation Commission*, where we held that a "target" to increase ridership by 15% was not a binding obligation and could not be enforced against the public transportation agency. 366 F.3d 692, 695 (9th Cir. 2004). But the analogy fails. In *Bayview*, our conclusion that the ridership target was an unenforceable goal relied on two primary aspects of the transportation control measure at issue—its language and logic. *Id.* First, we noted that nothing in the transportation control measure's language actually required a ridership increase by any amount, and that instead, the "expected ridership increase was never described as anything more than a 'target[.]'" *Id.* at 698. The word "target" was significant, because agreeing to establish one was "not the same as promising to attain" that ridership increase. *Id.* Here, however, the Plans use mandatory and non-discretionary language to "commit[] . . . to adopt[ing] and implement[ing] measures that will achieve specific [emissions] reductions by specific years." Approval of 8-Hour Ozone Plan for San Joaquin Valley, 77 Fed. Reg. 12,652, 12,653–54 (Mar. 1, 2012) (to be codified at 40 C.F.R. pt 52); *see* 40 C.F.R. § 52.220(c)(356)(ii)(B)(2) and (4), (392)(ii)(A)(2), (395)(ii)(A)(2), (397)(ii)(B)(2) (codifying by reference both CARB's and the District's commitments to propose and adopt emission control measures by specific

years and to achieve specific amounts of aggregate emission reductions by specific years). The language differences between the ridership target in *Bayview* and California's commitments here support the conclusion that California's commitments are not merely aspirational goals.

Second, we concluded in *Bayview* that the ridership target relied on "hoped-for increases in productivity" to boost public transit use. *Bayview*, 366 F.3d at 698. But predicting public human behavior is unreliable. *Id.* at 699. Here, by contrast, state commitments to propose and adopt emission control measures require government agency action, not action by the public. Commitments by the state of California to reduce aggregate emissions reductions by specially tailored methods are reasonably within the control of state agencies. The idea that the public transportation agency in *Bayview* might control ridership increases "impli[ed] the implausible proposition" that a "target" for anticipated public participation compelled compliance. *Id.* But the idea that California here can and will propose and adopt emission control measures and achieve aggregate emission reductions by specific amounts and within specific time-frames is plausible and consistent with commitments by other states that other circuits have upheld. *See BCCA*, 355 F.3d at 841 (upholding EPA's approval, into the Houston, Texas SIP, of commitments to adopt and implement additional emission controls on a fixed schedule and to achieve additional emission reductions); *Envtl. Def.*, 369 F.3d at 209–10 (upholding EPA's approval of enforceable commitments into New York's one-hour ozone SIP). Because the commitments in both Plans require California to meet specific reductions by specific deadlines, we conclude that California's commitments to propose and adopt emission control

measures and to achieve aggregate emission reductions are not merely aspirational, unenforceable goals.

## B

Alternatively, Petitioners argue that even if California's commitments to achieve aggregate emission reductions are not merely aspirational goals, they remain unenforceable because: (1) California has ultimate discretion to determine whether the aggregate emission reduction commitments are met; and (2) enforcement is impractical because it is "virtually impossible" to determine, based on limited and difficult-to-access information, whether California has met its aggregate emission reduction commitments. Even if citizens could access such information, Petitioners argue, "enforcement would be delayed until it was too late to meet the attainment deadline." We disagree.

Petitioners' discretion argument focuses on the way California calculates the amount of emission reductions it must achieve to meet the relevant NAAQS and on California's determinations whether adopted emission control measures actually achieve claimed reductions. Petitioners contend that by reducing the baseline inventory, which is an estimate of future emissions assuming no control strategies are adopted, California can claim that fewer or less stringent control measures than those approved in the SIP are required to reduce emissions to the necessary levels.

While we did conclude in *Warmerdam* that neither a baseline inventory nor the methodology used to calculate it is independently enforceable, 539 F.3d at 1072–73, that does not mean that California's emissions reduction strategies here are unenforceable. The reason is simple: Once approved into

a SIP, the measures and the emissions reduction requirements, as well as the relevant deadlines, are binding on the state, and can only be altered through a SIP revision approved by EPA in another notice-and-comment rulemaking. *See* 42 U.S.C. § 7410(l); 5 U.S.C. § 553. Moreover, EPA may not approve any SIP revision that would interfere with California's ability to meet the air quality requirements. 42 U.S.C. § 7410(l). Even if California sought to revise its commitments, it would need to obtain EPA's approval, which could only be forthcoming following a notice-and-comment period in which Petitioners could participate.

Finally, Petitioners argue that California's commitments to propose and adopt emission control measures and to achieve aggregate emission reductions are unenforceable as a practical matter, because "EPA and citizens would be left to determine, based on information exclusively held and maintained by CARB and the District" whether the state agencies have fulfilled their commitments. Petitioners further contend that even if one could determine whether California's commitments were fulfilled, such a determination could not be made until after milestone dates and shortly before the attainment deadline, which in turn would delay enforcement and remedy until "well after the attainment date." We reject Petitioners' practicality argument.

For support, Petitioners cite EPA's published fundamental principles for effective SIPs and control strategies. One of these principles is enforceability, which requires that SIPs (1) be "duly adopted, and specify clear, unambiguous, and measurable requirements"; (2) contain a "legal means for ensuring that sources [comply] with the control measure"; and (3) be "enforceable in practice." State Implementation

Plans, 57 F3d. Reg. 13,498, 13568 (proposed Apr. 16, 1992) (to be codified at 40 C.F.R. pt. 52). Specifically, a "regulatory limit is not enforceable if, for example, it is impractical to determine compliance with the published limit." *Id.* Petitioners fail to show how California's commitments fall short of this standard. As EPA and the District explain, the information that Petitioners contend is so difficult to know or retrieve is readily available throughout the regulatory processes preceding adoption of emission control measures into the SIP. *See* Cal. Gov't Code §§ 11340, 11343–49.6 (listing notice and information requirements for California agencies when considering and adopting regulations); Cal. Health & Safety Code §§ 40725–28.5 (listing public hearing and record requirements for rules or regulations to be considered and adopted by California Air Pollution Control Districts).[4] CARB itself prepares assessments of the potential for significant environmental impacts of proposed regulations. Cal. Code Regs. tit. 17, § 60005 (2015). CARB and the District must also analyze "reasonably foreseeable methods" for how compliance will be achieved with certain environmental regulations. Cal. Code Regs. tit. 14, § 15187 (2015). And EPA's own notice-and-comment rulemaking procedures to determine whether measures will receive SIP credit present another opportunity for citizens to track the development of emission control measures. Aside from information available from or produced as a result of administrative rulemaking at the state and federal levels, the public can also seek information within the control of California agencies through the California Public Records Act. *See* Cal. Gov't Code §§ 6250–6276.48. We conclude that California's commitments to propose and adopt emission

---

[4] All citations to the California Code refer to the West 2014 edition.

control measures and to achieve aggregate emission reductions are not unenforceable for lack of publicly available information.

We also conclude that Petitioners can seek timely remedies under the CAA if California does not fulfill its commitments to propose and adopt emission control measures or to achieve aggregate emission reductions. Because the public cannot sue to enforce a commitment until after a commitment deadline has passed does not negate a commitment's enforceability. As EPA notes, this argument conflates enforcing specific commitments, which would be independently enforceable emission control measures in a SIP, with the more general requirement that states attain national air quality standards by specific dates. We decline to extend the CAA's citizen-suit provision beyond what it says by providing for general attainment-forcing remedies when the CAA does not. *See* 42 U.S.C. § 7604(a) (authorizing citizen suits to obtain remedies for, among other things, violations of "emission standard[s] or limitation[s]."). If California does not fulfill a commitment to propose and adopt emission control measures or to achieve aggregate emission reductions, the public can seek a remedy for such specific violations. If, on the other hand, California does not attain required air quality standards, EPA may use means available under other parts of the CAA to ensure that the state attains the relevant national air quality standard. *See, e.g.*, 42 U.S.C. §§ 7413, 7509.

Because California's commitments to propose and adopt emission control measures and to achieve aggregate emission reductions are neither aspirational goals nor unenforceable as a matter of discretion or practicality, we conclude that these commitments are enforceable emission standards or

limitations, and that EPA's approval of them into the Plans was not arbitrary or capricious and did not violate the CAA. We deny this portion of the petition for review.

**V**

We grant the petition for review in part and remand the matter to EPA for further proceedings consistent with our decision.

Petitioners may recover from EPA the costs and fees incurred in this litigation. 42 U.S.C. § 7607(f). Determination of an appropriate amount of fees and costs is referred to the Appellate Commissioner, who shall conduct whatever proceedings he deems appropriate, and who shall have authority to enter an order awarding the same. *See Ober v. EPA*, 84 F.3d 304 316 (9th Cir. 1996).

**PETITION GRANTED in part, DENIED in part, and REMANDED.**