**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MEDICAL ADVOCATES FOR HEALTHY AIR; NATIONAL PARKS CONSERVATION ASSOCIATION; ASSOCIATION OF IRRITATED RESIDENTS; SIERRA CLUB, | No. 20-72780 EPA Nos. EPA-R09-OAR-2019-0318 FRL-10011-44-Region 9 |
| Petitioners, | |
| v. | MEMORANDUM* |
| U.S. ENVIRONMENTAL PROTECTION AGENCY; ANDREW WHEELER, Administrator, U.S. Environmental Protection Agency; JOHN BUSTERUD, Regional Administrator, Region IX, U.S. Environmental Protection Agency, | |
| Respondents, | |
| ———————————————— | |
| SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT, | |
| Intervenor. | |

On Petition for Review of an Order of the
Environmental Protection Agency

———————————————

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted February 11, 2022
San Francisco, California

Before: WARDLAW, IKUTA, and BADE, Circuit Judges.

Petitioners seek review of a final rule issued by the Environmental Protection Agency (the EPA) under the Clean Air Act (the CAA), 85 Fed. Reg. 44,192-01 (July 22, 2020), approving an attainment plan (the "2018 Plan") submitted by California and adopted by both the San Joaquin Valley Unified Air Pollution Control District (the "District") and the California Air Resources Board (CARB) to meet the 2006 24-hour $PM_{2.5}$ national ambient air quality standards (NAAQS) in the San Joaquin Valley.[1] The final rule also approved California's request to extend the attainment date for meeting these standards from December 31, 2019 to December 31, 2024.

Petitioners argue that the EPA's approval was arbitrary and capricious because: (1) the 2018 Plan's aggregate commitments did not satisfy applicable requirements, and (2) the EPA's analysis regarding implementation of the best available control measures ("BACM") and most stringent measures ("MSM") was

---

[1] $PM_{2.5}$ means particles measuring less than 2.5 microns in diameter. $PM_{2.5}$ may form due to the emissions of other chemicals such as nitrogen oxides ($NO_x$). *See* 85 Fed. Reg. 17,382 (Mar. 27, 2020).

arbitrary and capricious, such that the attainment deadline extension should not have been granted.

We first consider petitioners' challenges to the 2018 Plan's aggregate commitments, involving the use of incentive-based control measures to achieve specified reductions of emissions according to a schedule. To the extent petitioners argue that the EPA's approval of aggregate commitments in the 2018 Plan is illegal because such commitments allow states to impermissibly defer plan development, we reject this argument. We have previously concluded that the EPA may reasonably rely on a control strategy that includes aggregate commitments, and that such an approach does not violate the CAA. *See Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1179 (9th Cir. 2015); *see also* 42 U.S.C. § 7410(a)(2)(A) (providing that a state implementation plan may include "schedules and timetables for compliance"). We also reject petitioners' argument that the aggregate commitments are invalid on the grounds that they are unenforceable. Upon the EPA's approval of the aggregate commitments as part of the 2018 Plan, they become federally enforceable requirements of an applicable implementation plan, which can be enforced by the public and the EPA. *See* 42 U.S.C. §§ 7602(q), 7604(a)(1), 7413(a)(1); *see also Arvin*, 786 F.3d at 1180. Petitioners' reliance on 42 U.S.C. §§ 7511a(e)(5) and 7410(k)(4) to support their

argument that aggregate commitments are precluded by the CAA is misplaced. The CAA's inclusion of § 7511a(e)(5), which allows the EPA to approve provisions of an implementation plan in certain ozone nonattainment areas "which anticipate development of new control techniques or improvement of existing control technologies," does not prevent the EPA from approving a plan such as the one here, which neither relies on anticipated developments in technology nor involves an ozone nonattainment area. Nor does § 7410(k)(4), which allows the EPA to "approve a plan revision based on a commitment of the State to adopt specific enforceable measures by a date certain," prevent the EPA from approving a state's aggregate commitments as part of a larger plan. *See* 85 Fed. Reg. at 44,204.

Petitioners next challenge the EPA's application of its traditional three-factor test for evaluating the permissibility of aggregate commitments. Under this established test, the EPA considers: (1) whether the commitment addresses a limited portion of the statutorily required program; (2) whether the state is capable of fulfilling its commitment; and (3) whether the commitment is for a reasonable and appropriate period of time. *See* 75 Fed. Reg. 74,518-01, 74,535–36; *see also BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 840 (5th Cir. 2003). We conclude that

the EPA reasonably determined that the first and third factor were met, but erred in concluding that the second factor was met.

First, the EPA reasonably determined that the commitment addressed a limited portion of the statutorily-required program in light of "the facts and circumstances of the nonattainment area at issue." 85 Fed. Reg. at 44,198. Petitioners argue that the EPA erred in allowing California to make aggregate commitments to address 17 to 31 percent of the emissions reductions, because historically the EPA had approved aggregate commitments that addressed approximately 10 percent of the emissions to be reduced. We reject this argument because petitioners fail to identify any statutory or regulatory authority precluding the EPA from allowing aggregate commitments to address a portion of total emission reductions larger than 10 percent, and because the petitioners fail to otherwise establish that the EPA's approval of higher percentages in this case was so unreasonable as to be arbitrary and capricious. *See Bahr v. EPA*, 836 F.3d 1218, 1228 (9th Cir. 2016) ("[The arbitrary and capricious] standard is 'highly deferential, presuming the [EPA's] action to be valid and affirming the agency action if a reasonable basis exists for its decision.'" (citation omitted)).

Second, the EPA reasonably determined that the aggregate commitments were for a reasonable and appropriate period of time, therefore satisfying the third

factor of the three-factor test. Although the record shows that the District intends to implement certain measures after January 1, 2024, the date by which California must achieve its commitments, the EPA points out that the 2018 Plan does not *rely* on these measures to demonstrate attainment. Petitioners do not affirmatively dispute this point. Thus, the EPA's approval of the time period for the aggregate commitments is not arbitrary or capricious.

Petitioners also argue that the aggregate commitments did not satisfy the second factor of the three-factor test—whether the state is capable of fulfilling its commitments—because California is unable to adequately fund the Plan's incentive-based control measures. We agree with this argument. Based on CARB's own calculations, there is a potential $2.6 billion shortfall in funding for the incentive-based measures, which could result in emission reduction shortfalls of approximately 7% of the total $NO_x$ reductions and 8% of the total $PM_{2.5}$ reductions necessary for attainment. *See* 85 Fed. Reg. at 44,201. The EPA fails to provide evidence or reasoned explanation for its conclusion that California will be able to fulfill its commitment despite this shortfall. Instead, the EPA speculates that circumstances may arise in the future that will allow the state to do so. Specifically, the EPA asserts (1) that its own analysis indicates the funding shortfall may be closer to $2 billion as opposed to $2.6 billion, *see id.*, and the

6

actual funding shortfall may be even smaller, (2) that certain emission reduction measures might be less expensive to implement than the state currently predicts, (3) that certain yet-to-be-quantified sources of emission reductions in the 2018 Plan might make up for shortfalls in emission reductions caused by lack of funding, and finally, (4) that California and the District may identify other measures in the future to fulfill the commitments. Because these speculative assertions are unsupported by evidence, they fail to ensure that California and the District have a plausible strategy for achieving this portion of the attainment strategy, and therefore do not collectively satisfy the second factor of the EPA's three-factor test. *See also* 42 U.S.C. § 7410(a)(2)(E) (requiring, *inter alia*, that state implementation plans provide necessary assurances of adequate funding for carrying out the plan). Therefore, we conclude that this portion of the EPA's analysis is arbitrary and capricious because there is no "rational connection between the facts found" by the EPA regarding the funding shortfall and the EPA's conclusion that the District will nevertheless meet the attainment goals. *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1132 (9th Cir. 2011).

Having addressed petitioners' challenges relating to the EPA's approval of the aggregate commitments, we now turn to petitioners' argument that the state failed to meet BACM and MSM requirements, and that the EPA's approval of the

request for a five-year extension was therefore arbitrary and capricious on that ground. We conclude that the EPA undertook a rigorous analysis of compliance with BACM and MSM requirements in granting the five-year extension. *See* 42 U.S.C. § 7513(e). We reject petitioners' arguments to the contrary.

We first reject petitioners' argument that the EPA cannot evaluate the stringency of control measures in the aggregate, but must evaluate each control measure individually to ensure each is the most stringent available. That is, we defer to the EPA's reasonable conclusion that it can apply a holistic MSM analysis when the rule as a whole is as or more stringent than any analogous rule in other jurisdictions. Petitioners have not pointed to any provision precluding such an approach or requiring the EPA to conduct an individualized MSM analysis for each control measure. For similar reasons, we also reject petitioners' argument that the EPA erred in using different levels of generality to evaluate the stringency of control measures, because the petitioners cite no legal authority preventing the EPA from doing so. The EPA's thorough analysis provided a sufficient explanation to support its conclusion.

We reject petitioners' argument that Rule 4901 of the 2018 Plan is not sufficiently stringent because the rule involves implementing relevant measures in some areas of the San Joaquin Valley and not others. The EPA reasonably

determined that this type of targeted approach is acceptable provided the rule as a whole is as or more stringent than any analogous rule in other jurisdictions. As the EPA determined, and as petitioners do not affirmatively dispute, Rule 4901 results "in greater emission reductions than the provisions of any other analogous rule." Therefore, petitioners fail to demonstrate the EPA's conclusion was arbitrary and capricious.

Petitioners' argument that the EPA failed to adequately consider increased building electrification requirements also fails, because the EPA considered such an approach and reasonably accepted the state's determination that it was not feasible at this time.

Finally, we reject petitioners' argument that the EPA was unreasonable in approving the District's Rule 4550 "menu" approach to controlling dust emissions from agricultural sources—i.e., allowing the regulated community to choose among various control measures—because such an approach is not sufficiently stringent. We have previously upheld the approval of such an approach as a "common and accepted practice for the control of dust . . . [especially] because of the variable nature of farming." *See Vigil v. Leavitt*, 381 F.3d 826, 837 (9th Cir. 2004) (citation omitted).

Accordingly, we vacate the portion of the final rule that determined that the relevant aggregate commitments satisfied the second factor of the three-factor test and remand to the EPA for further consideration of the second factor, and for further proceedings consistent with this decision. *See also* 42 U.S.C. § 7410(a)(2)(E). In all other respects, the petition is denied. *See Vigil*, 381 F.3d at 847.

**PETITION GRANTED IN PART AND DENIED IN PART.**[2]

---

[2] Each party will bear its own costs.